TEAMSTERS FREIGHT LOCAL UNION NO. 480 and Local Union No. 667, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America

v.

SOUTHERN FORWARDING COMPANY.

No. 76–327–NA–CV.

United States District Court,
M. D. Tennessee,
Nashville Division.

Oct. 1, 1976.

Cecil D. Branstetter, Nashville, Tenn., for plaintiffs.

Charles Hampton White, Nashville, Tenn., for defendant.

MEMORANDUM

MORTON, District Judge.

Plaintiffs, local labor unions, bring this action against the defendant, a trucking company, requesting that the defendant be preliminarily enjoined from spending moneys received from the sale of certain of its Interstate Commerce Commission granted operating rights to Curtis Transportation Company and Overnite Transportation Company. Jurisdiction of this court is invoked pursuant to 29 U.S.C. § 185.

On September 23, 1976, a hearing was held to determine whether this court should issue a preliminary injunction. The evidence adduced therein is recounted below.

On February 17, 1975, the defendant notified plaintiff Local Union No. 480 that it had contracted to transfer certain of its operator rights to Curtis Transports, Inc. ("Curtis"). Curtis is not a signatory to the National Master Freight Agreement (Exhibit A).[1] In addition to the bid from Curtis, the defendant had received bids from two companies who are signatories to the Master Freight Agreement. However, only one of those bids was in writing (Exhibit H). The ICC approved the sale of these rights to Curtis on dates between April 10 and April 18, 1975.

Prior to the granting of ICC approval of the sale to Curtis, certain disputes arose between Local 480 and the defendant regarding the construction and application of Article 1 of the Master Freight Agreement. Pursuant to established grievance procedures,[2] Local 480 filed a grievance with the Southern Area Multi-State Grievance Committee ("Grievance Committee") on Febru-

1. Throughout this opinion, reference will be made to the National Master Freight Agreement for the period from July 1, 1973 through March 31, 1976. However, the court would note that the parties have stipulated that the provisions of the Agreement in issue in this case were not changed by the successor National Motor Freight Agreement dated April 1, 1976 through March 31, 1979.

2. Article 43 of the Southern Conference Area Over-the-Road Motor Freight Agreement covering drivers employed by private, common, and contract carriers (Exhibit A) provides for the establishment of Grievance Committees. Article 44 provides, "The Unions and the Employers agree that there shall be no strikes, lockouts, tieups, or *legal proceedings* without first using all possible means of settlement as provided for in this Agreement and in the National Agreement, if applicable, of any controversy which might arise." (emphasis added). Article 44 also provides that the decision, by majority vote, of a Grievance Committee shall be final and binding.

ary 26, 1975, in an attempt to resolve the conflict between the defendant and the Union (Exhibit C). Specifically, the Union was requesting that the defendant be ordered to comply with Section 3 of Article 1 of the Master Freight Agreement which provides, in pertinent part:

"On the sale, transfer or lease of an individual run or runs, or rights only, the specific provisions of this Agreement, excluding riders or other conditions, shall prevail. It is understood by this Section that the parties hereto shall not use any leasing device to a third party to evade this Agreement. In the event the Employer fails to require the purchaser, transferee, or lessee to assume the obligations of this Agreement, the Employer (including partners thereof) shall be liable to the Local Union and to the employees covered for all damages sustained as a result of such failure to require assumption of the terms of this Agreement, but shall not be liable after the purchaser, the transferee or lessee has agreed to assume the obligations of this Agreement.

"When a signator to this Agreement purchases rights from another signator, the purchaser must accept the affected employees of the seller, in accordance with the provisions of Article 5, Section 3 before hiring any new employees. The applicable lay-off provisions of this Agreement shall apply. When rights are sold to a non-signator to this Agreement, and such purchaser is the sole bidder, the provisions of this Agreement shall not apply. However, in the event of multiple bids, one or more of such bidders being signator to this Agreement, and the seller elects to sell to a non-signator, then all of the provisions of Article 1, Section 3, shall apply."

The Grievance Committee ordered the defendant to comply with the provisions of Article 1 on April 28, 1975 (Exhibit D).

On August 18, 1975, the Grievance Committee took testimony regarding a second grievance arising out of the sale of rights to Curtis. This grievance was filed by Kenneth Gibbs, who was seeking to recover for all "lost time" due to this sale of rights. On February 3, 1976, the Grievance Committee ruled that "Under the terms of the transaction, Curtis Transportation is the successor employer and subject to the terms of the contracts." (Exhibit H).

In a letter dated July 27, 1976, the defendant notified Local 480 that it had "entered into a contract to sell its interstate operating authority to Overnite Transportation Company." ("Overnite"). The letter further provided that Overnite was the high bidder for the rights being sold, and a non-signator to the Master Freight Agreement (Exhibit F). On July 30, 1976, Local 480 filed a grievance with the Grievance Committee, with respect to the sale of rights to Overnite, requesting that the Grievance Committee order the defendant to comply with the provisions of Articles 1 and 5 of the Master Freight Agreement (Exhibit G). This grievance has not yet been processed by the Grievance Committee.

█ It is well settled that an injunction should issue only when courts of law cannot afford an adequate remedy in damages. *Detroit News Publishing Ass'n v. Detroit Typographical Union No. 18*, 471 F.2d 872, 876–877 (6th Cir.), *cert. denied*, 411 U.S. 967, 93 S.Ct. 2149, 36 L.Ed.2d 687 (1973); *Treasure Val. Potato Bar. Ass'n. v. Ore-Ida Foods, Inc.*, 497 F.2d 203, 218 (9th Cir.), *cert. denied*, 419 U.S. 999, 95 S.Ct. 314, 42 L.Ed.2d 273 (1974). Plaintiffs' claims solely involve damages. Thus, unless plaintiffs can establish that damages would be an inadequate remedy, plaintiffs' request for injunctive relief must be denied.

█ Plaintiffs have attempted to prove that money damages would be an inadequate remedy because the defendant is insolvent. Insolvency of a defendant has been recognized as a proper ground for granting injunctive relief.[3] However, the

---

3. Although there is a regrettable absence of reported federal case law with regard to this principle, the court deems it to be an eminently sound principle as evidenced by the numerous

court finds that the plaintiffs did not meet their burden of proof in establishing that Southern Forwarding Company is insolvent. Therefore, plaintiffs' request for a preliminary injunction must be denied.

 Moreover, it is the opinion of this court that it lacks jurisdiction to grant the preliminary injunction with respect to the moneys received from the sale of rights to Overnite given the present posture of this case. "[W]hen a collective bargaining agreement contains provisions relating to grievance procedures . . . those procedures must be exhausted prior to litigation." 18E Business Organizations, Kheel, *Labor Law* § 26.03(2) at 26–33 (1974); *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); *Letchford v. International Harvester Co.*, Civil No. 6369 (M.D.Tenn., filed March 6, 1972). Plaintiffs have submitted their grievance about the sale to Overnite to the Grievance Committee as they are required by their contract.[4] Since that grievance is still pending before the Grievance Committee, the court cannot take any action with regard to the subject matter of that grievance.[5] In addition, at this time the court cannot determine whether there is a conflict between the two arbitration decisions previously rendered. The grievance now pending may, when processed, shed some light on the matter.

An appropriate order will be entered.

---

state court decisions in which injunctive relief has been granted because the defendant was insolvent. See, *Memphis & C. R. Co. v. Greer*, 87 Tenn. (3 Pickle) 698, 11 S.W. 931 (1889) and the cases cited in 42 Am.Jur.2d *Injunctions* § 53 (1969) and 43 C.J.S. *Injunctions* § 25(2)(b) (1945).

**4.** See note 2, *supra*.

**5.** The court would note, however, that it can enforce any award made by the Grievance Committee since that award is final and binding. See, *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); Kheel, *Labor Law, supra*.