**TRAILER TRAIN COMPANY, a corporation and Railbox Company, a corporation, Plaintiffs,**

v.

**STATE BOARD OF EQUALIZATION, Defendant.**

**No. C–80–4399 SW.**

United States District Court, N. D. California.

April 3, 1981.

Weyman I. Lundquist, Patricia L. Shanks, Noel M. Lawrence, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for plaintiffs Trailer Train Co. and Railbox Co.

Gary A. Larson, Calvin J. Abe, Deputy Attys. Gen., San Francisco, Cal., for defendant.

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

SPENCER WILLIAMS, District Judge.

### INTRODUCTION

The court originally issued its order in this case March 10, 1981. That order is hereby amended to clarify the court's opinion.

This action involves a challenge to action taken by defendant State Board of Equalization (the "Board") by which it informed plaintiffs Trailer Train Company ("Trailer") and Railbox Company ("Railbox") that the tax rate on their rail cars for 1978 would be more than doubled. Plaintiffs contend defendant violated section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976 (the 4–R Act) by discriminatory property tax treatment of plaintiffs' rail property. Accordingly, plaintiffs sought a preliminary injunction to enjoin the Board from collecting the additional taxes.

This case recently came before the court on plaintiffs' motion for a preliminary injunction. The question presented was whether imposition of the additional tax impermissibly conflicts with federal law prohibiting the taxation of rail transportation property at a rate higher than the rate generally applicable to commercial and industrial property in the same assessment jurisdiction.

After careful consideration of the briefs and arguments of counsel, the pleadings, affidavits and other evidence in the record, the court concluded that this issue must be answered in the affirmative and orally granted the motion. The following constitutes a brief statement of the court's reasons for so ruling, and its written order thereon.

*FACTUAL BACKGROUND* [1]

On June 6, 1978, California voters approved Proposition 13 (now Article XIIIA of the California Constitution). Section 1 of Article XIIIA limited the ad valorem tax rate applicable to real property. The Board determined at the time that the Proposition 13 tax rate limitation must be applied not only to real property but to personal property as well on the basis of California Constitution Article XIII, Section 2 which requires that personal property not be taxed at a rate higher than real property in the same taxing jurisdiction. The Proposition 13 tax rate limitation took effect for the tax year beginning July 1, 1978.

On July 31, 1978, acting pursuant to the provisions of the Private Railroad Car Tax Law [2] and Proposition 13, the Board valued all railroad cars owned or used by plaintiffs, Trailer and Railbox as of the lien date, March 1, 1978. The Board determined the full cash value of Trailer Train cars and Railbox cars to be $87,732,440 and $18,916,-652 respectively. The Board determined the assessed value of Trailer Train cars and Railbox cars to be $21,933,110 and $4,729,-163 respectively. Plaintiffs' railroad cars were initially given the benefit of the tax rate limitation for the 1978–79 tax year. Thus a tax at the rate of $4.85 per hundred dollars of assessed value was levied on the 1978–79 assessed values of plaintiffs' property.

This situation remained unchanged until the California Supreme Court ruled in August, 1980 in *Board of Supervisors of San Diego v. Lonergan*, 27 Cal.3d 855, 167 Cal. Rptr. 820, 616 P.2d 802 (1980) that property on the 1978–79 unsecured tax roll is to be taxed at the 1977–78 secured rate rather than at the new Proposition 13 rates. The California court reasoned that taxes on the unsecured roll for 1978 were due and payable March 1, 1978, which was prior to the voter approval of the Proposition in June 1978, and therefore could not have been in the contemplation of the minds of the voters.

More importantly, the *Lonergan* court explained that article XIII, section 12 of the California Constitution provided that taxes levied on property not secured by real estate were based on the tax rate applied to *secured* property in the preceding tax year. The court held that Proposition 13 did not impliedly repeal section 12, and therefore the unsecured roll's rate has already been set for 1978–79 and could not be reduced by referring to the lower rates established by the newly passed proposition.

Since private railroad cars are by statute taxed at the prior year's average rate of general property taxation in the State, the Board concluded that Lonergan required that the 1977–78 average rate of general property taxation be applied to plaintiffs' property for the 1978–79 tax year rather than the tax rate as limited by Proposition 13. Thus, in September, 1980, the Board imposed a tax on the 1978–79 assessments of plaintiffs' property at the rate of 10.68 dollars per hundred dollars of assessed value, less the amount of the tax previously paid at the rate of 4.85 dollars per hundred dollars of assessed value. This resulted in a tax increase of $1,278,700.31 on Trailer Train property and $275,210.20 on Railbox property for the 1978–79 tax year.

*LEGAL STANDARDS*

Plaintiffs in this action for injunctive relief contend defendants have violated section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976 (the 4-R Act [3]), by discriminatory property tax treatments of plaintiffs' rail transportation property. Section 306(1)(c) provides that a state may not levy or collect "any ad valorem property tax on transportation property at a tax rate higher than the tax rate generally applicable to commercial and industrial property in the same assessment jurisdiction."

---

1. Many of the facts set forth in this section of the opinion are taken from the document entitled "Stipulation of Facts" submitted to the court prior to the hearing on the motion for preliminary injunction.

2. Cal.Rev. & Tax Code, §§ 11201 *et seq.*

3. 49 U.S.C. § 11503.

Section 306(2)(e) further provides that "in the event that the ratio of the assessed value of all other commercial and industrial property in the assessment jurisdiction to the true market value [of such property] cannot be established . . ." the court shall hold unlawful "the collection of any ad valorem property tax on such transportation property at a tax rate higher than the tax rate generally applicable to taxable property in the taxing district."

Finally, section 306(2) expressly authorizes federal district courts "to grant such mandatory or prohibitive injunctive relief, interim equitable relief, and declaratory judgments as may be necessary to prevent, restrain, or terminate any acts in violation of this section."

## ANALYSIS

The facts in this case make it fairly obvious that the Board taxed the plaintiffs' rail transportation property at a rate that is higher than that generally applicable to taxable property in the taxing district. By its October 10, 1980 letter, the Board attempted to levy a tax on plaintiffs' property at the rate of 10.68 dollars per hundred dollars of assessed value while it appears that the general property tax rate for the 1978–79 tax year was 4.70 per hundred dollars of assessed value. Therefore, if section 306 applies to this case, the California property tax on rail transportation property is in conflict with the mandates of this federal statute.

The Board first argues that section 306 does not apply to this case because the statute expressly limits itself to discrimination exceeding five percent. Section 306(2)(c) provides:

"(c) no relief may be granted under this section unless the ratio of assessed value

to true market value, with respect to transportation property, exceeds by at least 5 per centum the ratio of assessed value to true market value, with respect to all other commercial and industrial property in the same assessment jurisdiction."

The Board argues that the 4–R Act's five percent jurisdictional requirement has not been met. This court disagrees. It is clear that Congress only intended the five percent limitation to be a threshold requirement in *assessment ratio* discrimination cases.[4] To require a showing of a five percent discriminatory ratio in a *tax rate* case, however, would frustrate the purpose of section 306. The minimum percentage rate was included in section 306 because Congress was not concerned with insignificant variations that might develop in state assessment practices.[5] Plainly, differences of much less than five percent in rate cases could still result in substantial discrimination against a particular classification of property.

The instant case is illustrative of the fact that a disparity in comparable tax rates can present more than an insignificant variation. To establish the degree of disparity in this case, it first must be determined the rates which are being compared. Defendant would have the court compare the rate applied to plaintiffs' rail transportation property with the rate applicable to all other *personal* property in the state. However, it is entirely inappropriate to compare plaintiffs' property with a hypothetical tax rate on personal property. First, tax rates were set only for the secured and unsecured rolls, each of which contains *both* personal and real property.[6] Second, plaintiffs' property is not taxed on either the secured or unsecured rolls, but rather is assessed and taxed by the State Board of Equalization.

---

**4.** The assessment ratio of 25 percent is the same, of course, for all property on either the secured or unsecured roll and all parties concede that no discrimination exists with respect to this ratio.

**5.** *Louisville & Nashville Railroad v. Louisiana State Tax Commission*, 498 F.Supp. 418 (M.D. La.1980).

**6.** The facts reveal that the unsecured roll contains only 67 percent personal property while the secured roll is comprised of almost 40 percent personal property.

Section 306(2)(e) of the 4–R Act provides that when the comparable assessment ratio for industrial and commercial property is not available,[7] the tax rate on the subject property must be compared with the tax rate generally applicable to taxable property in the taxing district.[8] In the present case, therefore, the tax rate on plaintiffs' property must be compared with the *average* tax rate for all property in the state.

The average rate for general property taxation for the 1978–79 tax year was 4.70 dollars per hundred dollars of assessed value. This rate, as previously mentioned, is substantially lower than that applied to plaintiffs' rail transportation property. The result is a discriminatory tax rate for transportation property which must be enjoined.

The Board also contends that the 4–R Act does not apply to the tax assessment herein because it was allegedly assessed prior to the effective date of the act. Section 306(2)(b) states that "the provisions of this section shall not become effective until 3 years after the date of enactment of this section." The 4–R Act was passed on February 5, 1976 and thereby became effective on February 5, 1979.

The Board argues that its actions October 10, 1980 action was not assessing a new tax, but rather merely was "amending" a pre-1979 assessment. While defendant's argument is creative, it cannot be adopted in this case for several reasons.

First, and most significant, section 306's reach extends not only to the assessment of discriminatory taxes but to their collection as well. Assuming arguendo, defendant's "amendment" theory was accepted, it is entirely clear that the defendant still sought to collect this discriminatory tax well after the effective date of the federal statute.

Second, defendant's theory that it "amended" the prior assessment and did not levy a new tax against plaintiffs' property defies common sense and ignores the legislative purpose of the delayed effective date of the act.

An examination of the legislative history of section 306 reveals that the Congressional purpose of delaying the effective date of the statute for a period of three years was to afford states the time to eliminate any disparities that existed in their taxing system with respect to transportation property.[9] It is incongruous that a state tax decision in 1980 to levy and collect additional taxes theretofore uncollected could not be held to violate a federal statute passed in 1976 which delayed its effective date only to permit time for corrective state measures. Clearly, the October 10, 1980 letter represents a new tax decision which violated the federal statute at that time.

■ Finally, as a matter of federal supremacy,[10] the power of the state to discriminate against rail transportation property for purposes of applying tax rates was preempted by the passage of the 4–R Act in 1976.

In passing section 306, Congress evidenced its intent to regulate the area of discriminatory taxation of transportation property. It is well established that when Congress acts in such a way as to manifest its purpose to exercise its constitutional authority, the regulatory power of the state ceases to exist.[11]

For example, in *Erie Railroad v. New York*, 233 U.S. 671, 681, 34 S.Ct. 756, 759, 58

7. Beginning in the 1978–79 tax year, the Board ceased to publish the ratios of assessed value to true market value for California counties, because with the adoption of Proposition 13, assessments in California are no longer based upon true market value.

8. To restrict comparison solely to the rate for the unsecured roll would violate this requirement because it appears that this roll is applicable to only nine percent of all taxable property in the state. Additionally, if plaintiffs' property were taxed locally it would be entered on the secured roll.

9. *See State of Tennessee v. Louisville & Nashville Railroad Co.*, 478 F.Supp. 199, 209 (M.D. Tenn.1979).

10. *See* U.S.Const., Art. VI, cl. 2.

11. *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 157, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978).

L.Ed. 1149 (1913), the Court applied the preemption doctrine and struck down state legislation attempting to regulate the hours of service of railroad telegraph operators engaged in interstate commerce. The Court held that Congress had earlier acted in such a way as to manifest its purpose to exercise its constitutional authority over this activity, and therefore the regulatory power of the states was preempted. *Id.* at 681, 34 S.Ct. at 759. As in the present case, the *Erie Railroad* Court held that the preemption doctrine applied from the time of the passage of the act notwithstanding the fact that its effective date was still in the future.

In the present case, the federal statute occupies the field regulating taxation of transportation property. The state cannot overturn this strong Congressional policy by the passage of Proposition 13 or its subsequent interpretation in *Lonergan.* Therefore, the federal statute requires the defendant to reduce the assessment ratio for railroad property to that generally applied to other property during the same tax year.

Section 306, by its own terms, authorizes a federal court to issue injunctions to prevent the enforcement of taxes which discriminate against rail transportation property. In this case, the injunction must issue as it is clear that a federal statute has been violated. Moreover, the plaintiffs have demonstrated a likelihood of success on the merits and irreparable harm.

It is now fairly well-established that when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief, the normal requirements for equitable relief need not be satisfied.[12] However, while this court need not inquire into the traditional grounds for equitable relief in a section 306

case,[13] there exist other strong arguments why this injunction should issue.

 As previously mentioned, the plaintiffs have an extremely strong argument on the merits. It additionally appears that the plaintiffs would suffer irreparable harm if the injunction is not granted. Pursuant to plaintiffs' request, this court is willing to take judicial notice of the fact that the prime interest rate far exceeds the twelve percent interest which would be paid by the state if plaintiffs were able to obtain a refund. While defendant is correct that injunctions are usually inappropriate in cases where the loss may be measured by money damages,[14] a monetary award in this case would be inherently inadequate because the defendant would not be required to fully respond in damages in the event plaintiffs are successful on the merits.[15]

In light of the fact that the State of California could not have anticipated this tax revenue nor have utilized the windfall in planning its budget, it is difficult to perceive any significant hardships for the defendant if the injunction is granted. Moreover, the strong federal interest in eliminating discriminatory state taxation of transportation property evidenced by the passage of the 4–R Act further compels this court's conclusion.

### CONCLUSION

 The plaintiffs have demonstrated to the satisfaction of this court that it should exercise its remedial powers granted under section 306 by enjoining the taxation of rail transportation property at a rate higher than that generally applicable to other taxable property in the taxing district. Such a remedy is necessary to effectuate the Congressional policy under the 4–R Act.

12. *United States v. City and County of San Francisco,* 310 U.S. 16, 30–31, 60 S.Ct. 749, 756–757, 84 L.Ed. 1050 (1940). *Lathan v. Volpe,* 455 F.2d 1111, 1116–17 (9th Cir. 1971); *Sierra Club v. Coleman,* 405 F.Supp. 53, 54 (D.D.C.1975).

13. *Tennessee v. Louisville & Nashville Railroad Co.,* 478 F.Supp. 199, 210 (M.D.Tenn.1979).

14. *See, e. g., A. L. K. Corporation v. Columbia Pictures, Inc.,* 440 F.2d 761 (2d Cir. 1971).

15. *See Teamsters Freight Local v. Southern Forwarding Co.,* 424 F.Supp. 11, 13 n.13 (M.D. Tenn.1976).

Accordingly, IT IS HEREBY ORDERED that plaintiffs' Motion for a Preliminary Injunction is granted.

IT IS FURTHER ORDERED that plaintiffs' remaining monetary and pendent claims for relief are dismissed without prejudice.