**ACF INDUSTRIES, INC., General American Transportation Corp., and Union Tank Car Company, Plaintiffs,**

v.

**CALIFORNIA STATE BOARD OF EQUALIZATION, Defendant.**

No. C–86–5438 DLJ.

United States District Court, N.D. California.

Dec. 9, 1986.

As Amended Dec. 16, 1986.

---

Fielding Lane, of the law firm Thelen, Marrin, Johnson & Bridges of San Francisco, and James W. McBride and Gregory G. Fletcher, of the law firm Laughlin, Halle, Gibson & McBride of Memphis, Tennessee, for plaintiffs.

Deputy Atty. Gen. Julian Standen, for defendant.

## ORDER OF ABSTENTION

JENSEN, District Judge.

This matter came on for hearing on December 5, 1986, on plaintiffs' motion for a preliminary injunction and this Court's Order to Show Cause why it should not stay further proceedings under the Ninth Circuit's abstention order in *Atchison, Topeka & Santa Fe Ry. v. Board of Equalization*, 795 F.2d 1442 (9th Cir.1986) (*"Santa Fe "*). Plaintiffs ACF Industries, Inc. ("ACF"), General American Transportation Corp. ("GATC"), and Union Tank Car Co. ("UTC") were represented by their counsel, Fielding Lane, Esq., James McBride, Esq., and Gregory Fletcher, Esq. This Court admitted Mr. McBride and Mr. Fletcher to practice in this District *pro hac vice*. Defendant California State Board of Equalization ("Board") was represented by its counsel, Deputy Attorney General Julian Standen. After considering the parties' arguments on both the abstention issue and the merits of the motion for preliminary injunction, and examining the moving papers and records on file, the Court determines that under the abstention principles set forth in *Santa Fe, supra,* it must abstain from further proceedings in this action pending finality of the state-court valuation challenges noted in that case.

## I.

Plaintiffs filed this action on September 22, 1986 pursuant to § 306(c) of the Railroad Revitalization and Regulatory Reform Act of 1976 ("4–R Act"), codified at 49 U.S.C. § 11503(c). Plaintiffs are railroad car companies ("carlines") whose cars were assessed for the 1986 tax year by defendant Board on August 1, 1986. They con-

tend that the Board has overvalued the true market value of their property which will cause discriminatory taxation in violation of the 4–R Act. Plaintiffs have submitted the affidavit of an expert witness to support this contention, and seek a preliminary injunction both to limit their 1986 tax to an amount based on the true market value asserted by plaintiffs and to prevent the State of California from collecting that portion of the 1986 tax which is based on the state's higher valuation of true market value. They seek, thereafter, at trial on the merits, to redetermine the true market value for their properties.

Plaintiffs have other actions before this Court under the 4–R Act which contend that the State of California has overvalued the true market value of their property in a tax year preceding 1986. C–82–6512–DLJ; C–82–6600–DLJ. On June 22, 1984, this Court consolidated plaintiffs' actions, which had been filed in 1982, along with other carlines' actions similarly challenging the Board's valuations and methodologies. *Trailer Train Co. v. State Board of Equalization,* No. C–81–4365–SW. (N.D. Cal. June 22, 1984). In that Master Consolidated Case, the Court issued a preliminary injunction against collection of more than 59.6% of property taxes assessed against plaintiff carlines for 1985–86 and subsequent tax years. *Southern Pacific Transportation Co. v. California,* No. C–81–4365–SW (N.D.Cal. Nov. 20, 1985). That order encompassed equalization relief. With respect to the carlines' overvaluation challenges, this Court ruled that it had no jurisdiction under the 4–R Act to hear valuation claims and granted carlines' petition to appeal. On appeal, the Ninth Circuit reversed, holding that a claim of a specific instance of overvaluation in state tax assessment of the true market value of rail transportation property can be heard in federal district court under the authority of the 4–R Act. At the same time the Circuit held that the district court should abstain from considering the merits of the claims at issue and stay consideration of the federal question pending finality of prior state court actions involving the merits of the

valuation issue under California law. *Atchison, Topeka & Santa Fe Ry. v. Board of Equalization,* 795 F.2d 1442 (9th Cir. 1986) ("*Santa Fe*"). Accordingly, this Court stayed plaintiffs' actions contesting the valuation by the State of California of true market value in a tax year preceding 1986 along with all other proceedings in the Master Consolidated Case. *Trailer Train Co. v. State Board of Equalization,* C–81–4365–DLJ (N.D.Cal. Aug. 6, 1986).

Plaintiffs in the present action also have refund actions pending in state court with respect to tax years 1979, 1980, and 1981. Affidavit of Carl D. Eckhoff; Affidavit of Robert J. Zwartz; Affidavit of Alan Rusin. These refund actions include claims alleging overvaluation and challenging the Board's method of valuation. Plaintiffs have no state judicial or administrative proceedings pending with regard to their 1986 tax challenges. Affidavits of Eckhoff, Zwartz, and Rusin, *supra.*

On October 30, 1986, this Court ordered plaintiffs AFC, GATC, and UTC to show cause why it should not abstain from further proceedings, pursuant to the *Santa Fe* holding. The parties briefed both the abstention issue and the application for a preliminary injunction, and on December 5, 1986, this Court heard oral argument on both questions.

## II.

In *Santa Fe, supra,* the Ninth Circuit held that although this Court has the power to hear the carlines' overvaluation claims, it should abstain from hearing the merits of the valuation challenges until the State Courts have resolved the valuation issue in the first instance. The court explained that this holding rested on the "larger relationship" between federal courts and state taxation. *Santa Fe, supra,* 795 F.2d at 1446. The court balanced the congressional mandate that the 4–R Act provide a federal cause of action and a federal forum for rail companies' claims of discriminatory state taxation, against powerful countervailing concerns of comity in the overall structure of "Our Federalism,"

with regard to "the imperative need of a state to administer its own fiscal operations."

The *Santa Fe* Court reasoned that although Section 11503 is an exception to the Tax Injunction Act, it is not an exception to general principles of abstention. *Santa Fe, supra,* 795 F.2d at 1446. In deciding that abstention was called for in these cases, the court relied primarily on the rationale of judicial economy announced in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), where abstention was based on related proceedings pending in state court when the federal action was filed. Because appellant rail car companies in *Santa Fe* had attacked the same valuations in state court as they challenged in federal court, and because the state provides adequate protection for their discrimination claims by way of remedies which are "plain, adequate and complete," abstention was proper. That appellants had initially chosen a state forum was a factor obviously weighed by the Court, but the Court also indicated that the timely availability of an adequate state system of remedies counseled abstention. The court explained: "Our analysis might be different under a different state assessment structure, *or* if the railroads did not have the initial choice of forum." *Santa Fe, supra,* 795 F.2d at 1448 (emphasis added). This statement in the disjunctive highlights the considerations of comity which underlie the holding of *Santa Fe.*

Plaintiffs argue that the abstention directed by the *Santa Fe* court is to be viewed generally, in light of the policy which holds that abstention is the exception, not the rule, *see, e.g., Alabama Pub. Serv. Comm'n v. Southern R. Co.,* 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951), and in this specific case, is to be limited to those cases where there is a pending parallel state action where the railroad taxpayer has already invoked state remedies to challenge the state tax assessment of true market value in the tax year at issue. Plaintiffs contend that valuation decisions are necessarily based on year-by-year variations in company performance and economic environment and that, as a result, there must be a pending state challenge to valuation in the same tax year challenged in federal court for there to be "related proceedings" which require *Colorado River* abstention. The Board argues that the *Santa Fe* court did not adopt such a restricted view of "related proceedings" and that, in point of fact, as the parties to this action agreed at oral argument, the Ninth Circuit had directed abstention in the consolidated federal action covering tax years 1975–1983 regardless of the fact that not every taxpayer in *Santa Fe* had a pending parallel state action for every tax year involved.[1] In light of the substantial basis, discussed below, for the broader definition of appropriate abstention in this case as well as the existing scope of abstention which has been directed, this Court rejects the narrow interpretation of plaintiff that there must be a pending state valuation challenge by the same taxpayer to the same year and adopts the position that a state proceeding can, in fact and law, be "related" for purposes of *Santa Fe* abstention even though it involves a different tax year or taxpayer.

### III.

The threshold issue before the Court is whether plaintiffs' instant action falls within the scope of the abstention rule laid down in *Santa Fe.* The Ninth Circuit there considered the several factors outlined in *Colorado River, supra,* and decided that: as to amount of activity, there were ad-

---

1. Plaintiff carlines argue that the Ninth Circuit misinterpreted the record before it in *Santa Fe,* and based its holding on the mistaken belief that each plaintiff had a parallel state action for identical tax years, at an advanced state of litigation. They state that this mistake is the subject of a Petition for Rehearing currently pend-

ing before the Ninth Circuit. Plaintiffs offer nothing beyond this assertion to support their position that the actual scope of the abstention ordered was not intended by the *Santa Fe* court, and this Court will, of course, base its ruling solely upon the opinion as reported.

vanced state proceedings and no federal activity; as to the nature of the interest, property taxation is a matter of special interest to the state and a relevant state court decision would have substantial effect upon the case; as to decision would have substantial effect upon the case; as to convenience, neither forum is more convenient; and, as to balance of interests, state interests are of greater weight. 795 F.2d at 1447. Moreover, and of particular relevance to this case, the *Santa Fe* court held that state law is the law of decision in a case challenging valuation and that a trial on the merits of a valuation challenge would deal with the factual question of true market value which, under the Act, is to be determined according to state law. 795 F.2d 1448. This latter consideration underscores the propriety of giving state courts the first opportunity to decide the validity of the Board's valuation methodology.

Plaintiffs urge this Court to proceed to the merits of their valuation challenge, arguing that abstention based on *Colorado River* is inapposite and that no other form of abstention is appropriate.[2]

If this Court were to proceed to the merits of plaintiffs' valuation challenge to their 1986 assessments, it would be addressing essentially the same subject matter as is involved in the *Santa Fe* claims. Plaintiffs assert that a trial on the merits would pose the question, "Under objective principles of financial analysis, what is the true market value of the carlines' property in California for the 1986 tax year?" Reply Brief at 4. It is apparent that such a challenge to the Board's assessment of "true market value" necessarily involves a challenge to the Board's valuation methodology. Plaintiffs in this case have, as in *Santa Fe*, challenged the Board's methodology. The carlines contest, *inter alia*, the Board's definition of "income"; they dis-

pute its use of economic rents as opposed to contract rents, and its treatment of administrative expenses. The Board acknowledges that the claims in *Santa Fe* and those now before the Court raise identical issues of methodology. Indeed, the Board conceded at oral argument that a final judgment on methodology issues in one of the state actions would bind it with respect to all taxpayers for all tax years. It is readily apparent that the issue of methodology is inextricably bound up in all of plaintiffs' valuation challenges, and that disposition of plaintiffs' 1986 claims would necessarily affect the litigation in the prior state actions to which this Court must defer. In essence, then, plaintiffs ask this Court to decide a functionally identical issue without waiting for the state courts to decide the valuation issue in the first instance.

Plaintiffs contend that the 4–R Act represents a congressional mandate to the district court to hear every overvaluation claim brought before it, despite the potential of significant intrusion into states' administration of their taxes that would ensue. Plaintiffs maintain that even if each year, each taxpayer-carline raises an issue of overvaluation, the district court must hear them all. But the court in *Santa Fe* warned that:

[a]n overly broad construction of section 11503(c) "would impose significant burdens on district courts," forcing them to sit as state tax assessment boards for rail transportation property "and would substantially thwart the tax collection process of states and their subdivision."

*Santa Fe*, 795 F.2d at 1446 (quoting *Burlington Northern R. Co. v. Lennen*, 715 F.2d 494, 498 (10th Cir.1983) *cert. denied*, 467 U.S. 1230, 104 S.Ct. 2690, 81 L.Ed.2d 884 (1984)).

 For the reasons stated above, the Court finds that the instant action falls

---

2. In light of the decision of this Court that the *Colorado River* rationale is applicable to this case, no other general principles of abstention have been reviewed, although, arguably, the potentially disruptive impact of the exercise of federal review upon state efforts to establish a

coherent policy of state taxation consistent with the strictures of the 4–R Act should be considered in such a review. *See, e.g., Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

within the holding of *Santa Fe.* This action presents functionally identical issues of valuation methodology, requiring the Court to abstain from further proceedings until the state actions noted in *Santa Fe* have produced a final judgment regarding the Board's calculation of true market value for rail transportation property. The Court declines to adopt plaintiffs' very narrow reading of *Santa Fe* and very broad reading of § 306 of the 4–R Act. To do so would contravene the Ninth Circuit's expressed concern for notions of comity within a system of federalism, creating a rule of law that opens the way for increasing federal intrusion into the administration of state property taxes.

## IV.

Although the Court does not now examine the merits of plaintiffs' motion for injunctive relief, it may be useful to consider what must be raised prior to the grant of a preliminary injunction under the 4–R Act. In *Santa Fe, supra,* the Ninth Circuit agreed with the Tenth Circuit that federal courts may hear claims of overvaluation under the 4–R Act; it declined, however, to adopt that circuit's threshold requirement of a "strong showing of a purposeful overvaluation" with "discriminatory intent." *Santa Fe, supra,* 795 F.2d at 1446 (quoting *Burlington Northern R. Co. v. Lennen,* 715 F.2d 494, 498 (10th Cir.1983), *cert. denied,* 467 U.S. 1230, 104 S.Ct. 2690, 81 L.Ed.2d 884 (1984)). In *Trailer Train Co. v. State Board of Equalization,* 697 F.2d 860 (9th Cir.), *cert. denied,* 464 U.S. 846, 104 S.Ct. 149, 78 L.Ed.2d 139 (1983), the Ninth Circuit upheld this Court's grant of a 4–R Act preliminary injunction without any showing of the traditional requirements for equitable relief. Nonetheless, plaintiffs there had made an "extremely strong argument" on the merits. *See Trailer Train Co. v. State Board of Equalization,* 511 F.Supp. 553, 558 (N.D.Cal.1981).

■ If this Court were to consider the merits of plaintiffs' motion, it would have to distinguish this case from prior cases, such as *Trailer Train, supra,* in which the factual context clearly demanded grant of a preliminary injunction. Plaintiffs here have taken no position on the probability of their success on the merits. Instead, they argue that the Court should grant a preliminary injunction upon the showing of a possible violation of the Act. Plaintiffs have submitted their expert's affidavit contesting the Board's valuation method and results, but injunctive relief must be based on evidence of discriminatory valuation not simply upon evidence of a contested valuation. In this regard, plaintiffs offer of this Court's prior stipulated order enjoining collection of more than 59.6% of taxes assessed as the sole evidence of the necessary element of state discrimination is of questionable sufficiency.

## V.

The conclusion that abstention is required under *Santa Fe* effectively precludes the grant of a preliminary injunction regarding plaintiffs' 1986 tax liabilities, which fall due on December 10, 1986. Plaintiffs claim for declaratory relief respecting the alleged excess tax is still before the Court. Moreover, the Court is aware of the uneasy position in which plaintiffs now find themselves. Although they could ultimately prevail on the valuation issue in the state-court actions for earlier tax years, they have waived their state remedies with respect to tax year 1986. This Court's abstention ruling might appear to have put beyond reach the only relief left available to plaintiffs, by staying their federal action for prospective injunctive relief when they are foreclosed from later bringing a refund action in state court.

Plaintiffs will not be left without a remedy by the Court's abstention ruling. Although their failure to pursue prepayment administrative remedies forecloses them from raising any factual challenges to their 1986 assessments, plaintiffs will have four years after payment of the tax to file a refund claim in state court. Calif.Rev. & Tax.Code § 11553. It appears that in such an action they would be entitled to raise

any legal errors—such as improper valuation methodology—determined by courts subsequent to this Order of Abstention. Moreover, among the forms of relief available in 4–R Act actions is an order for a refund of taxes collected in violation of that Act. *Cf. Trailer Train v. State Board of Equalization,* 511 F.Supp. 553, 558 (N.D.Cal.1981), *aff'd,* 697 F.2d 860 (9th Cir.1983). Accordingly, should plaintiffs prevail in the state-court actions on the issue of overvaluation, this Court can fashion an order for a refund, if appropriate, in the portion of plaintiffs' action which is stayed but not dismissed by this Order.

Accordingly, IT IS HEREBY ORDERED that:

Good cause appearing, and in accordance with the published opinion of the Ninth Circuit Court of Appeals filed July 31, 1986, all matters in this action are hereby stayed pending resolution by the state courts of the valuation issue.

