**SHELL OIL COMPANY, a corporation, Appellant,**

v.

**George FRUSETTA et al., Appellees.**

**No. 17022.**

United States Court of Appeals
Ninth Circuit.

May 24, 1961.

---

Walker Lowry and McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for appellant.

Law Offices of C. Ray Robinson, C. Ray Robinson, Frederick S. Wyle and Duane W. Dresser, San Francisco, Cal., Ray J. Scott, and Wyckoff, Parker, Boyle & Pope, Watsonville, Cal., J. T. Harrington, Salinas, Cal., for appellees.

Before ORR, BARNES, and JERT-BERG, Circuit Judges.

ORR, Circuit Judge.

In 1951 appellant Shell Oil Co., hereafter Shell, leased from appellees certain lands situate in San Benito County, California, for oil and gas exploration. The leases contain a warranty by appellees that they own the lands in fee simple and will defend the title against any adverse claims and hold Shell harmless therefrom. There is also a provision stating that if appellees own a smaller interest than a fee simple their royalties will be reduced accordingly, and a provision that if any action shall be brought challenging appellees' interest in the lands appellant may deposit the royalties accruing to the lands so challenged in a special bank account pending the final determination of said action. Shell entered into possession under the leases and was successful in producing oil and gas.

In 1957 a group of people filed six actions in the Superior Court of San Benito County, California, seeking judgments declaring them to be the owners of an interest in part of the leased lands. Shell and appellees were made defendants in the said suits. A dispute then arose between Shell and appellees as to whether the written leases accurately record their oral agreements with respect to the above-mentioned provisions, appellees claiming that Shell orally promised to be responsible for any imperfections in the title. Despite this disagreement the parties entered into a written agreement not to file cross-claims against each other in the state court actions, and for some three years Shell and appellees stood shoulder to shoulder in defending said actions. However, on March 3, 1960, appellees gave notice in open court that they were going to move in the state court to be relieved from the written agreement and to be permitted to file cross-complaints so that the parties' dispute could be resolved in the pending state actions. Said motions were filed on March 21, 1960, were heard on April 7th of that year, and were granted on April 11th, whereupon cross-complaints were promptly filed. However, before any of this could be accomplished Shell on March 18, 1960, filed in the United States District Court for the Northern District of California, Southern. Division, an action praying for a declaratory judgment on these same matters in dispute between it and appellees. It is agreed between the parties that the same identical issues are raised in Shell's complaint for declaratory judgment as appear in the thirteen cross-complaints filed by the appellees in the state court. Appellees in their cross-complaints included as a cross-defendant the Western Title Insurance Co., a California corporation which sold Shell vast amounts of insurance on the title received from appellees and hence has a financial interest in the outcome of the litigation between the parties. Shell did not include Western in its complaint for declaratory judgment, since that would have destroyed the diversity of citizenship on which Shell bases its claim of federal jurisdiction.

Upon motion the district court dismissed the declaratory judgment action. In ruling on the motion to dismiss the court said it felt this action was nothing more than an attempt to use the Declaratory Judgment Act, 28 U.S.C.A. § 2201 et seq., as a device to remove a nonremovable dispute from the state courts, and that granting such declaratory judgments "would in many respects evade the purpose and intent of the Removal Act [28 U.S.C.A. § 1441 et seq.]." The court also stated that it felt the substantive questions raised were so clearly connected with the pending state litigation that the state court was the most satisfactory forum in which to hear the matter. Shell asserts that in so dismissing this action the district court abused the discretion vested in it. Thus is presented the question we are called upon to determine.

We believe the district court acted with sound discretion in dismissing the action. It is well established that even though jurisdiction may exist under the Declaratory Judgment Act the granting of declaratory judgments is at the discretion of the district court. Brillhart v. Excess Insurance Co., 1942, 316

U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620; Maryland Casualty Co. v. Boyle Construction Co., 4 Cir., 1941, 123 F.2d 558. Said discretion is to be exercised in accordance with sound judicial principles and the purposes of the Declaratory Judgment Act. The mere fact that Shell succeeded in filing its complaint in the federal court three days before appellees filed their motions in the state court does not automatically entitle Shell to a federal declaratory judgment hearing. Kerotest Mfg. Co. v. C-O-Two Co., 1951, 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200. It is not the purpose of the Declaratory Judgment Act to encourage a race to the courthouse for the purpose of transferring litigation to the federal courts from the state courts. The purpose of the Declaratory Judgment Act is to afford an added remedy to one who is uncertain of his rights and who desires an early adjudication thereof without having to wait until his adversary should decide to bring suit, and to act at his peril in the interim. Aetna Casualty & Surety Co. v. Quarles, 4 Cir., 1937, 92 F.2d 321; Berlitz School of Languages v. Donnelly & Suess, D.C. E.D.Pa.1949., 84 F.Supp. 75. Shell was in no such situation. Its adversary had announced in open court that it was going to bring these same issues before the state court, which it promptly proceeded to do. This occurred in a state court proceeding in which the parties were each a defendant, and the issues raised are related to those involved in the state suits in that they involved the duty to defend said suits and the proper handling of royalties being claimed by both appellees and the state court plaintiffs. It is not the purpose of the Declaratory Judgment Act to allow disputes arising in the course of state court litigation to be argued in the federal courts instead. "The object of the statute is to afford a new form of relief where needed, not to furnish a new choice of tribunals or to draw into the federal courts the adjudication of causes properly cognizable by courts of the states." Aetna Casualty & Surety Co. v. Quarles, 4 Cir., 1937, 92 F.2d 321, 324; Na-

tional Cancer Hospital of America v. Webster, 2 Cir., 1958, 251 F.2d 466, 468. See also American Telephone & Telegraph Co. v. Henderson, D.C.N.D. Ga.1945, 63 F.Supp. 347.

■ Shell attempts to place itself outside the rule stated above by arguing that it is an abuse of discretion to deny declaratory judgment when one of the issues raised is who must defend pending state court litigation. The cases with which Shell attempts to establish this proposition are not in point here. Most of them involve situations where a company which is not a party to pending state court litigation seeks a declaratory judgment as to whether it must defend such litigation as one party to the litigation is claiming—a situation where the company seeking declaratory relief would have to act at its peril if declaratory judgment were not allowed. None of the cases cited by Shell involve situations where the two parties to the declaratory judgment action were already parties to related state court actions and where the declaratory judgment defendant had previously declared during the state court proceeding that it was going to bring the same issues before the state court, which it promptly proceeded to do. Far more closely in point is the case of Thompson v. Moore, 8 Cir., 1940, 109 F.2d 372. In that case the declaratory judgment defendant had earlier brought an action against the plaintiff in the state courts raising the same substantive issues as in the declaratory judgment action, but had joined the wrong in-state person as co-defendant. When the error appeared the declaratory judgment defendant had announced in open court that a nonsuit would be entered and a new suit would be filed immediately joining the correct in-state defendant. Nonsuit was entered on October 3rd and the new suit was filed on October 8th, but in the meantime the opposition filed a complaint for declaratory judgment in the federal district court on October 4th. The Eighth Circuit Court of Appeals, in affirming the district court's dismissal of the declaratory judgment action, pointed out that it

is not the purpose of the Declaratory Judgment Act to allow a party to obtain a change of tribunal and thereby accomplish in a given case what could not be accomplished under the Removal Act. 109 F.2d at page 374.

Shell also argues that the district court is better suited to determine the controversy between the parties than the state court—another consideration a district court should weigh in deciding whether to exercise jurisdiction under the Declaratory Judgment Act. Brillhart v. Excess Insurance Co., 1942, 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620. Shell contends (1) that only the district court can give a prompt decision of the substantive issues involved, (2) only the district court can decide the whole dispute in a single proceeding, (3) only the district court has all interested parties before it, and (4) only the district court has undisputed jurisdiction over the controversy.

■ (1) With regard to the allegation that only the federal court can give a prompt decision as to who must defend and the other substantive issues, two comments are in order: (a) We agree with the district court that there does not seem to be any real need for a rapid decision as to who must defend here. Both appellant and appellees are defendants in the state court actions, both have been actively defending those actions for three years without raising this question of who must defend, and there is every indication that both intend to continue defending these actions. There *is* a controversy as to who must eventually pay the costs of this defense, but it does not seem to be a matter requiring immediate resolution since there is no allegation that appellees are in poor financial condition and since appellant can always withhold from future royalty payments any amount appellees might later be found to owe appellant. (b) Regardless of this, the allegation that the state court could not decide these issues rapidly appears erroneous as a matter of law. Appellees' cross-complaints were brought as requests for declaratory relief under §

1060 of the California Code of Civil Procedure, and § 1062a of that Code states that all such claims "shall be set for trial at the earliest possible date and shall take precedence of all other cases."

■ (2) The allegation that only the district court can resolve the whole controversy in a single proceeding is based on the fact that in the state court thirteen cross-complaints have been filed in the six different actions pending there. However, it appears that a motion has been made to consolidate the six actions in the state court; under § 1048 of the California Code of Civil Procedure the state court has the power to so consolidate related claims and it seems reasonable to assume that the state court, in the interest of time, would do so here. Even though the original actions are not consolidated, it would seem entirely probable that the state court will consolidate the thirteen cross-complaints since those cross-complaints apparently all raise the same identical issues.

■ (3) Shell argues that certain parties it joined in the federal court action are not parties in the state court cross-complaints and thus only the federal court has all the parties to the controversy before it. However, by Shell's own admission these parties, who are members of appellees' families with minor or contingent interests, are all subject to joinder in the state court actions should Shell desire to so join them.

■ (4) Finally, with regards to jurisdiction Shell argues that the cross-complaints were improper cross-complaints under state law and were improperly received in view of the parties' written agreement not to file cross-complaints. Shell raised these same contentions in the state court when appellees' motion for permission to file the cross-complaints was argued, and the state court ruled against Shell. If a federal district court were to thereafter reconsider the same contentions it would be acting in effect as an appellate tribunal over the state court, something it clearly should not do. In addition, the

federal court's own jurisdiction is not "undisputed" as Shell alleges; appellees claim that the title insurance company which appellees joined in their cross-complaints should be joined as a party in the federal court, and if such joinder were allowed it would destroy diversity and federal jurisdiction.

As a final contention Shell claims it is entitled to have this controversy determined in the federal district court because it fears it will not get a fair trial in the state court, since Shell is a large foreign corporation while appellees are persons of influence and prominence in San Benito County. This is the sort of case for which Congress created and maintains the diversity jurisdiction of the federal courts, Shell says. In making this argument Shell has apparently confused the functions of the Declaratory Judgment Act and the Removal Act, 28 U.S.C. § 1441. It is the Removal Act which Congress enacted to provide for federal protective jurisdiction in all those cases where Congress felt such protection might be necessary. The Declaratory Judgment Act is not a jurisdictional statute at all and was not intended to expand federal protective jurisdiction to cover controversies not removable under the Removal Act. Aetna Casualty & Insurance Co. v. Quarles, supra.

Basically these facts stand out: one party to a state court action announced in open court its intention to file cross-complaints against another party, and the latter party thereupon quickly filed a complaint for declaratory judgment in a federal court because it preferred the federal court and would not be able to get there by removing the proposed cross-complaints. In such a situation the oft-repeated words of the Seventh Circuit Court of Appeals in American Automobile Ins. Co. v. Freundt, 7 Cir., 1939, 103 F.2d 613, become applicable: "The wholesome purposes of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum. It was not intended by the act to enable a party to obtain a change of tribunal and thus accomplish in a particular case what could not be accomplished under the removal act, and such would be the result in the instant case." 103 F.2d at page 617; Reiter v. Illinois Nat. Cas. Co., 7 Cir., 1954, 213 F.2d 946, 949; H. J. Heinz Co. v. Owens, 9 Cir., 1951, 189 F. 2d 505, 508; Thompson v. Moore, 8 Cir., 1940, 109 F.2d 372, 374.

Affirmed.