MOBIL OIL CORPORATION, Plaintiff,

v.

CITY OF LONG BEACH, A Municipal Corporation, Defendant.

SHELL OIL COMPANY, Plaintiff,

v.

CITY OF LONG BEACH, et al., Defendants.

TEXACO, INC., Plaintiff,

v.

CITY OF LONG BEACH, Defendant.

EXXON CORPORATION, Plaintiff,

v.

CITY OF LONG BEACH, Defendant.

UNION OIL COMPANY OF CALIFORNIA, Plaintiff,

v.

CITY OF LONG BEACH, et al., Defendants.

STATE OF CALIFORNIA and the City of Long Beach, Plaintiffs,

v.

TEXACO, INC., et al., Defendants.

Nos. CV 83–6424–WPG, CV 83–6467–WPG, CV 83–6471–WPG, CV 83–6494–WPG, CV 83–6554–WPG and CV 83–7303–WPG.

United States District Court, C.D. California.

Jan. 17, 1984.

**1198**

John E. Sparks, Darryl Snider, Brobeck, Phleger & Harrison, San Francisco, Cal., E.A. McFadden, Harold E. Zahner, Los Angeles, Cal., for Union Oil Co. of California.

Robert W. Parkin, City Atty., Robert G. Austin, Deputy City Atty., Long Beach, Cal., for City of Long Beach and John Dever.

John K. Van de Kamp, Atty. Gen., State of California, N. Gregory Taylor, Asst. Atty. Gen., Alan V. Hager, Nancy K. Chiu, Deputy Attys. Gen., Los Angeles, Cal., for Kenneth Cory, Leo McCarthy and Michael Franchetti.

Leslie C. Randall, Mauryne S. Fennell, Tony O. Hemming, Los Angeles, Cal., Robert D. Wilson, White Plains, N.Y., for Texaco Inc.

Andrew J. Kilcarr, Vincent Tricarico, James W. Mullenix, Donovan, Leisure, Newton & Irvine, Washington, D.C., Julia L. Cacciato, Donovan, Leisure, Newton & Irvine, Los Angeles, Cal., for Mobil ·Oil Corp.; Charles F. Rice, Donald L. Clarke, Charles B. Straus, III, Mobil Oil Corporation, New York City, of counsel.

Bruce G. Warren, Anaheim, Cal., William Simon, John S. Kingdon, Alan M. Grimaldi, Albert O. Cornelison, Jr., Howrey & Simon, Washington, D.C., William G. Winters, Jr., Raymond V. McCord, Houston, Tex., for Shell Oil Co. and Shell California Production Inc.

Philip K. Verleger, David A. Destino, McCutchen, Black, Verleger & Shea, Los Angeles, Cal., Robert Norris, Houston, Tex., for Exxon Corp.

Joseph A. Ball, Clark Heggeness, Ball, Hunt, Hart, Brown & Baerwitz, Long Beach, Cal., for Petro-Lewis Corp., Petro-Lewis Funds, Inc., Petro-Lewis Producing Co. II, and Partnership Properties Co.

## MEMORANDUM OF DECISION

WILLIAM P. GRAY, District Judge.

For purposes of this Memorandum, this somewhat simplified recital of facts is believed sufficient. In 1965 plaintiffs Mobil, Shell, Texaco, Exxon and Union ("the oil companies") jointly entered into a "Contractors' Agreement" with the City of Long Beach. Under this agreement, the oil companies have the right and obligation to produce oil from certain properties owned by Long Beach, purchase the oil so produced at prices dictated by the Contractors' Agreement, deduct from the purchase price the expenses of production listed or described in the agreement, and divide with Long Beach the remaining "net profit." The parties have been operating under this contract ever since its execution.

In 1980, Congress enacted the "Windfall Profit Tax on Domestic Crude Oil," 26 U.S:C. § 4986 et seq., which imposed upon the producer of the crude oil "An excise tax ... on the windfall profit from taxable crude oil removed from the premises during each taxable period." Id. § 4986. The plaintiff companies, in computing the net profit to be shared with Long Beach, have been deducting as expenses the Windfall

Profit Taxes paid by them. Long Beach contends that they are not entitled to do so under the Contractors' Agreement. After some negotiation in attempt to resolve the matter, Long Beach, on October 13, 1983, filed an action in California Superior Court that seeks, among other things, to recover from the oil companies the additional net profit that it would have received but for such deductions. The oil companies, defendants in that action, have caused it to be removed to this court, where it bears No. CV 83–7303–WPG ("the State action"). A few days before the State action was filed, each of the oil companies filed in this court a separate complaint seeking a declaratory judgment to the effect that such company has properly charged its Windfall Profit Tax payments against its net profits account.

Long Beach has moved for dismissal of the five actions brought by the oil companies. Such motion will be granted for reasons stated in this Memorandum. For the same reasons, the State action will be remanded to the California Superior Court. In view of these rulings, this court declines to act upon the oil companies' motions for summary judgment in their respective cases.

## I. *Substantial Federal Question.*

The first issue here raised by the parties is whether this court has subject matter jurisdiction under 28 U.S.C. § 1331. "Congress has given the lower federal courts jurisdiction to hear, originally or by removal from a state court, only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Board v. Laborers Vacation Trust,* —— U.S. ——, ——, 103 S.Ct. 2841, 2856, 77 L.Ed.2d 420, 442 (1983). The plaintiffs do not assert that the Windfall Profit Tax statute creates a cause of action, and I find no substantial federal question here.

## A. *Interpretation Of The Windfall Profit Tax.*

The oil companies insist that the Contractors' Agreement includes excise taxes in the list of proper charges against net profit and that the only task for the court is to interpret the Windfall Profit Tax to determine whether it imposes an excise. On the other hand, Long Beach acknowledges, as it must, that the subject statute, in its very words, does impose an excise tax. According to Long Beach, the question for the court is whether or not the terms of the Contractors' Agreement and the manner in which the oil companies have operated under it justify treating the subject tax as a deductible expense in computing net profits. As counsel for Long Beach asserted at the hearing on the motion to dismiss, "What we are arguing is that under the contract, after they have paid the tax, how they account for it within the terms of that contract." (Transcript, p. 54, lines 18–20). Long Beach's side of the argument is set out at paragraph 20 of its complaint (in Case No. 83–7303–WPG):

> The City and the State contend that under the terms of the Contractors' Agreement ..., windfall profit taxes are not proper charges to the contractors' net profits account. In other words, windfall profit taxes are not the type of costs incurred by the contractors that the contracts contemplate to be reimbursable to them so as to reduce net profits.

It is true, as counsel for Shell has pointed out, that paragraph 28 of the Long Beach complaint asserts that "The windfall profit tax is in the nature of a profits tax ...." But the paragraph goes on to argue that under the terms of the Contractors' Agreement its payment is not chargeable to the contractors' net profits accounts. Long Beach thus contends that the document that needs interpretation is not the Windfall Profit Tax statute but, instead, it is the Contractors' Agreement.

Long Beach therefore argues that the plaintiff oil companies are creating a nonexistent controversy over the meaning of the statute and using this, in effect, as a

defense to a state-law controversy over the contract language. I agree.

*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed.2d 1194 (1950), teaches that "if but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking." 10A C. Wright, A. Miller & M. Kane, FEDERAL PRACTICE & PROCEDURE, § 2767 at 744–45 (2d ed. 1983) (quoted in *Franchise Tax Board v. Construction Laborers Vacation Trust*, — U.S. —, —, 103 S.Ct. 2841, 2850, 77 L.Ed.2d 420, 435 (1983). *See also Public Service Commission of Utah v. Wycoff Co.*, 344 U.S. 237, 248, 73 S.Ct. 236, 242, 97 L.Ed. 291 (1950) ("Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction ...") (dictum); *Alton Box Board Co. v. Esprit de Corp*, 682 F.2d 1267, 1274 (9th Cir.1982) ("A claim does not arise under federal law within the meaning of section 1331 where it relies on federal law only to establish an immunity or defense which would preclude the declaratory judgment defendant from successfully litigating against the declaratory judgment plaintiff a claim arising under state law.")

 It is clear that the real controversy between the parties concerns the contract language. In light of the foregoing, I conclude that no substantial federal question is raised in the oil companies' complaints.

### B. *Alleged Fourteenth Amendment Violation.*

Shell contends that in challenging or threatening to sue the oil companies for having deducted the subject taxes in computing net profits, the City and State "... took arbitrary state action to impair Shell's property interest under the Contractors' Agreement." (Shell memorandum in opposition, in Case No. 83–6467–WPG, p. 16). I believe that such a contention borders on

the frivolous. Long Beach and the State have taken nothing. To the contrary, Long Beach is seeking a judicial determination that it has a right to more money than the oil companies have accorded it pursuant to their contractual obligations. This issue simply involves a dispute over a contract. Whether Long Beach is correct or not in its contention, it is acting in full accordance with due process of law.

Inasmuch as the controversy involved in this litigation presents no substantial federal question arising either under the Constitution or a statute, section 1331 does not provide jurisdiction for this court.

### II. *Diversity Jurisdiction and Rule 19, Fed.R.Civ.P.*

 The only other basis upon which this court might have jurisdiction is diversity, under 28 U.S.C. § 1332. *Union* is a California corporation, and its complaint must therefore be dismissed. Mobil, Shell, Texaco and Exxon are incorporated and have their principal places of business in other states and therefore are diverse. However, these five oil companies jointly entered into the Contractors' Agreement with Long Beach, and the question arises as to whether the joinder of all of them in any one of the individual actions is "needed for just adjudication" within the meaning of Rule 19 of the Federal Rules of Civil Procedure.

Certainly, each of the oil companies "... claims an interest relating to the subject of the action ...." I think it also true that any one of the companies that might not be able to participate in this litigation would be impeded in its "... ability to protect that interest ...." Of course, the companies that have diversity are all before this court and their respective cases readily could be consolidated. The joinder of Union would destroy diversity and thus deprive this court of jurisdiction. This fact, under the command of subsection "(b)" of Rule 19, requires that this court "... determine whether in equity and good conscience the action should proceed among the parties before it, or should be dis-

missed, the absent person being thus regarded as indispensable." In pondering this question, the court is mindful that Union has submitted an authoritative affidavit in which it agrees to be bound by a final judgment in Shell's case (No. 83–6467–WPG) if the need for diversity jurisdiction must preclude Union's proceeding in this court. Shell California Production Inc. and Pauley Petroleum Inc., both of whom might be considered indispensable and whose presence would destroy diversity, have submitted similar undertakings. In view of the dispositive action contemplated by the court, I refrain at this time from making a firm decision as to whether or not the Rule 19 problem is solved completely.

However, in light of the foregoing, and inasmuch as simultaneous actions by or against Union and Shell California Production Inc. and Pauley Petroleum Inc. in state court are available, I would normally be disposed to proceed with the diverse parties and not regard the three absent companies as indispensable. However, the reasons for my declining to proceed in these actions are set out in the remainder of this Memorandum.

III. *Principle of "Wise Judicial Administration".*

The issue of the proper computation of net profits under the Contractors' Agreement, in light of the Windfall Profit Tax, was first raised by Long Beach. Long Beach sought to resolve the matter by negotiation with the oil companies. When that failed, the city expressed its intention to litigate the issue in state court and promptly filed the action that the defendants removed here (Case No. 83–7303–WPG). All of the five oil companies, as well as Shell California Production Inc. and Pauley Petroleum Inc., are named in that action and, as is noted above, it seeks damages for alleged underpayment to Long Beach of net profits.

For reasons best known to themselves, the five defendant oil companies and Shell California Production Inc. preferred to be in federal court. They knew that the ac-

tion that Long Beach was about to file could not be removed on the ground of diversity. Presumably, they also were doubtful of establishing "federal question" jurisdiction under section 1331. So they hurriedly prepared and filed the individual actions that we now confront, thus raising in six separate proceedings, which were assigned to six separate judges, the very issue that is embodied in the single Long Beach action filed in state court. Subsequently, pursuant to interior policies of this district court, five of the judges took the time to give consideration to their respective matters and, as a matter of individual discretion, caused them to become my responsibility. A sixth action, filed by Shell California Production Inc., has been dismissed by the plaintiff.

■ I already have expressed the conclusion that this court does have diversity jurisdiction over the four diverse oil company cases. I also am thoroughly mindful of the admonition expressed by Justice Brennan in *Colorado River Water Conservation District, et al., v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976):

Abstention from the exercise of federal jurisdiction is the exception, not the rule. "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest." *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–189, 3 L.Ed.2d 1163, 79 S.Ct. 1060 [1062–1063] (1959).

However, Justice Brennan also stated that there are "... circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration

...." 424 U.S. at 818, 96 S.Ct. at 1246. I believe that such circumstances are present in these cases, for the following reasons:

1. As is stated earlier in this Memorandum, the State action filed by Long Beach could not properly have been removed to this court, and the oil companies sought to solve that problem by bringing declaratory relief actions through which they proposed to litigate the same issue as that raised in the State action. Much the same thing happened in the remarkably similar case of *Shell Oil Company v. Frusetta*, 290 F.2d 689 (9th Cir.1961). Our Court of Appeals affirmed the district judge in having dismissed the declaratory judgment action because he "... felt this action was nothing more than an attempt to use the Declaratory Judgment Act, 28 U.S.C.A. § 2201 *et seq.*, as a device to remove a nonremovable dispute from the state courts, and that granting such declaratory judgments 'would in many respects evade the purpose and intent of the Removal Act [28 U.S.C.A. § 1441 *et seq.*].'" 290 F.2d at 691. The opinion of the Court of Appeals went on to state:

> It is not the purpose of the Declaratory Judgment Act to allow disputes arising in the course of state court litigation to be argued in the federal courts instead. "The object of the statute is to afford a new form of relief where needed, not to furnish a new choice of tribunals or to draw into the federal courts the adjudication of causes properly cognizable by courts of the states."

290 F.2d at 692.

2. The "race to the courthouse" that was involved here is troublesome. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 818, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976), teaches that "In assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as ... the order in which jurisdiction was obtained by the concurrent forums, ...." Here, the oil companies filed their actions in this court a few days before Long Beach instituted its state court case. But the oil companies knew that it was coming and hurried to get theirs on file first. I quote once again from *Shell Oil Company v. Frusetta*, 290 F.2d 689, 692 (9th Cir.1961):

> The mere fact that Shell succeeded in filing its complaint in the federal court three days before appellees filed their motions in the state court does not automatically entitle Shell to a federal declaratory judgment hearing. *Kerotest Mfg. Co. v. C-O-Two Co.*, 1951, 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200. It is not the purpose of the Declaratory Judgment Act to encourage a race to the courthouse for the purpose of transferring litigation to the federal courts from the state courts. The purpose of the Declaratory Judgment Act is to afford an added remedy to one who is uncertain of his rights and who desires an early adjudication thereof without having to wait until his adversary should decide to bring suit, and to act at his peril in the interim. *Aetna Casualty & Surety Co. v. Quarles*, 4 Cir., 1937, 92 F.2d 321; *Berlitz School of Languages v. Donnelly & Suess*, D.C.E.D.Pa.1949, 84 F.Supp. 75. Shell was in no such situation. Its adversary had announced in open court that it was going to bring these same issues before the state court, which it promptly proceeded to do.

The above comments are equally applicable here. The oil companies have had and still have ample and timely opportunity to litigate the subject issue in the State action. For purposes of balancing the factors for and against abstention by this court, I am considering the matter as though the State action had been filed first.

3. The comments in the preceding paragraph bring this case reasonably close to a *Younger v. Harris* situation, which the opinion in *Colorado River* stated was one of the circumstances that would justify federal abstention. 424 U.S. at 816, 96 S.Ct. at 1245. Of course, in *Younger* the state action involved a criminal prosecution. However, *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), held that the principles of *Younger* are applicable to appropriate civil actions. In that case, Vail

was a judgment debtor in New York. He brought a civil rights action in federal court under 42 U.S.C. § 1983, in which he sought damages growing out of his having been held in contempt and jailed for having ignored subpoenas to appear at supplemental proceedings against judgment debtors pursuant to a state statute that he urged the federal court to declare unconstitutional. In rendering the opinion of the Court, Justice Rehnquist observed that Vail had had an opportunity to present his federal claims in the state proceedings and that "No more is required to invoke Younger abstention." 430 U.S. at 337, 97 S.Ct. at 1218.

Likewise, in the instant matters, the oil companies had ample opportunity to present their contentions in the state proceedings. Instead, they filed new actions here that not only sought declaratory relief, but three of them (Texaco, Mobil and Union) asked for injunctions that would restrain Long Beach from proceeding in state court. Although *Juidice* is distinguishable from this litigation in several ways, I think that the quotation from *Younger*, upon which Justice Rehnquist relied, has some pertinence here:

> As we emphasized in Huffman, the " 'more vital consideration' " behind the Younger doctrine of nonintervention lay not in the fact that the state criminal process was involved but rather in
>> " 'the notion of "comity," that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways' " *Huffman* [*v. Pursue, Ltd.*], 420 U.S. [592] at 601, 43 L.Ed.2d 482, 95 S.Ct. 1200 [at 1206], quoting *Younger*, 401 U.S., at 44, 27 L.Ed.2d 669, 91 S.Ct. 746 [at 750].

430 U.S. at 334, 97 S.Ct. at 1216.

4. Finally, the opinion in *Shell Oil Company v. Frusetta*, 290 F.2d 689, 691 (9th Cir.1961) stated that "It is well established that even though jurisdiction may exist under the Declaratory Judgment Act the granting of declaratory judgments is at the discretion of the district court [citing cases]. Said discretion is to be exercised in accordance with sound judicial principles and the purposes of the Declaratory Judgment Act." After giving all of the consideration to these principles and purposes of which I am capable, I exercise such discretion and elect to dismiss the action brought by the oil companies.

For the reasons stated in this Memorandum, and on the court's own motion, the State action will be remanded to the Los Angeles County Superior Court.

### JUDGMENT

For reasons stated in the Memorandum of Decision filed on this date, IT IS ADJUDGED that:

1. The complaints and actions in the following listed cases are ordered dismissed: CV 83–6424–WPG, CV 83–6467–WPG, CV 83–6471–WPG, CV 83–6494–WPG and CV 83–6554–WPG.

2. Case No. CV 83–7303–WPG, on the court's own motion, is ordered remanded to the Los Angeles County Superior Court.

The City of Long Beach is entitled to its costs in each of the foregoing actions.