534

MOBIL OIL CORP., Plaintiff-Appellant,

v.

CITY OF LONG BEACH,
Defendant-Appellee.

EXXON CORP., Plaintiff-Appellant,

v.

CITY OF LONG BEACH,
Defendant-Appellee.

UNION OIL COMPANY OF CALIFOR-
NIA, a corporation, Plaintiff-Appellant,

v.

The CITY OF LONG BEACH, a munici-
pal corporation; Kenneth Cory, Leo
McCarthy, Michael Franchetti and
John Dever, Defendants-Appellees.

SHELL OIL CO., Plaintiff-Appellant,

v.

CITY OF LONG BEACH, Kenneth Cory,
Leo McCarthy, Michael Franchetti and
John Dever, Defendants-Appellees.

TEXACO, INC., a Delaware corporation,
Plaintiff-Appellant,

v.

CITY OF LONG BEACH, a Municipal
corporation, Defendant-Appellee.

SHELL CALIFORNIA PRODUCTION,
INC., Plaintiff-Appellee,

v.

CITY OF LONG BEACH, a Municipal
Corporation; Kenneth Cory; Leo
McCarthy; Jesse Huff; and John Dev-
er, Defendants-Appellants.

Nos. 84–5546, 84–5547, 84–5552, 84–5584,
84–5595 and 84–5750.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 3, 1984.

Decided Sept. 24, 1985.

Andrew J. Kilcarr, Vincent Tricarico, John P. Dean, Donovan, Leisure, Newton & Irvine, Washington, D.C., Thomas R. Trowbridge, III, Donovan, Leisure, Newton & Irvine, New York City, for plaintiff-appellant.

Philip K. Verleger, David A. Destino, McCutchen, Black, Verleger & Shea, Los Angeles, Cal., Robert L. Norris, Exxon Corp., Houston, Tex., for Exxon Corp.

Charles F. Rice, Donald L. Clarke, Charles B. Strauss, III, Mobil Oil Corp., New York City, for Mobil Oil Corp.

Leslie C. Randall, Mauryne S. Fennell, Tony O. Hemming, Los Angeles, Cal., Robert D. Wilson, White Plains, N.Y., for Texaco Inc.

Bruce G. Warren, Shell Oil Co., Anaheim, Cal., William Simon, P.C., John S. Kingdon, Alan M. Grimaldi, Albert O. Cornelison, Jr., Howrey & Simon, Washington, D.C., William G. Winters, Jr., Raymond V. McCord, Shell Oil Co., Houston, Tex., for Shell Oil Co.

John K. Van de Kamp, Atty. Gen., N. Gregory Taylor, Asst. Atty. Gen., Alan V. Hager, Nancy K. Chiu, Dep. Attys. Gen., Los Angeles, Cal., for Cory, McCarthy & Huff.

Robert W. Parkin, Long Beach, Cal., for City of Long Beach & Dever.

Before WALLACE and BOOCHEVER, Circuit Judges, and MacBRIDE,* District Judge.

WALLACE, Circuit Judge:

These consolidated appeals concern the interpretation of a contract between the City of Long Beach (Long Beach) and various oil companies for the production of oil

* Honorable Thomas J. MacBride, Senior United States District Judge, Eastern District of California, sitting by designation.

on land held by Long Beach as trustee for the State of California. Mobil Oil Corporation (Mobil), Exxon Corporation (Exxon), Shell Oil Company (Shell), and Texaco Inc. (Texaco) appeal from Judge Gray's refusal to hear their diversity claims under 28 U.S.C. § 1332(a) for injunctive and declaratory relief. *Mobil Oil Corp. v. City of Long Beach,* 578 F.Supp. 1197, 1201–03 (C.D.Cal.1984) (*Mobil*). Union Oil Company of California (Union) appeals from Judge Gray's determination that Union's complaint seeking injunctive and declaratory relief presented no substantial federal question for purposes of 28 U.S.C. § 1331. *Id.* at 1199–1200. Long Beach appeals from Judge Real's determination that Shell California Production Inc.'s (Shell California) complaint seeking similar relief did present a substantial federal question for purposes of 28 U.S.C. § 1331 and from his conclusion for Shell California on the merits of its claim. *See Shell California Production Inc. v. City of Long Beach,* No. 83–6466 (C.D.Cal. Mar. 20, 1984) (*Shell California*).

We have jurisdiction over these consolidated appeals under 28 U.S.C. § 1291. We affirm Judge Gray's conclusion that Union's claim presented no substantial federal question, and we reverse Judge Real's determination that Shell California's claim did present such a question. We reverse, however, Judge Gray's rejection of diversity jurisdiction and remand the Mobil, Exxon, Shell, and Texaco claims. Because of our disposition of Shell California's claim, we do not reach Judge Real's decision on the merits in favor of Shell California.

## I

In 1965, Long Beach entered into an agreement (the Contractors' Agreement) with Texaco, Humble Oil and Refining Co. (now Exxon), Union, Mobil, and Shell (the oil companies). Under that agreement, the oil companies hold the right to explore for and produce crude oil on land held in trust by Long Beach, and they are obligated to purchase 80% of their production. The oil companies and Long Beach share any prof-

its from the operation of the oil field under a formula that is the subject of this dispute. Profits for purposes of the Contractors' Agreement are calculated by deducting "[a]ll sales, use and excise taxes" under article 18(b). Income or profits taxes, however, are not deductible.

In 1980, Congress enacted the Windfall Profit Tax on Domestic Crude Oil (WPT), 26 U.S.C. §§ 4986–4998, which it designated as an excise tax. *See id.* § 4986(a). Since the enactment of that tax, Long Beach and the oil companies have disputed the character and proper treatment of the WPT under the Contractors' Agreement. The oil companies have deducted any taxes paid under the WPT from their calculation of profits owed to Long Beach, claiming it is an excise tax deductible under article 18. Long Beach, however, has consistently asserted that it is more analogous to a tax on profits that cannot be deducted in determining Long Beach's share of profits.

In September of 1983, following three years of fruitless discussion over this issue, Long Beach informed the oil companies that it appeared litigation to resolve the dispute would be inevitable. Shortly thereafter, Mobil and Union sought declaratory relief in the form of counterclaims to an earlier action filed by Long Beach involving the same parties that was pending before Judge Gray in the Central District of California. That action was one of several consolidated as *In re Coordinated Pretrial Proceedings In Petroleum Products Antitrust Litigation,* MDL Docket No. 150–WPG, in which Long Beach alleges both antitrust and breach of contract claims against the oil companies under the same Contractors' Agreement. Long Beach opposed these motions, which Judge Gray denied on October 5, 1983 on the basis that Mobil's and Union's claims for relief were insufficiently related to MDL–150. At the same time, however, he indicated that should any similar claims be separately filed, he would accept assignment of them under the Central District's "low number" rule. This procedure allows subsequently filed cases involving the same subject mat-

ter to be assigned to the judge with the older, or lower filing number, action.

On October 6, 1983, Mobil filed a claim in the Central District for injunctive and declaratory relief based on its interpretation of the Contractors' Agreement, with the other oil companies following with similar claims by October 12, 1983. The Mobil, Exxon, Shell, and Texaco complaints asserted diversity jurisdiction under 28 U.S.C. § 1332(a). Shell California is a wholly-owned producing subsidiary of Shell and had recently succeeded to Shell's interest in the Contractors' Agreement. Union and Shell California are California corporations and, therefore, their complaints asserted only federal question jurisdiction under 28 U.S.C. § 1331. Each case was initially assigned to a different judge, but those brought by Mobil, Exxon, Shell, Texaco, and Union were later transferred to Judge Gray. Shell California's action was assigned to Judge Real, who did not transfer it.

Long Beach brought an action in state court against the oil companies on October 13, 1983, asserting claims under both the Contractors' Agreement and another production agreement. With respect to the Contractors' Agreement, that complaint sought declaratory relief and damages based on Long Beach's characterization of the contract. The oil companies removed Long Beach's state action to the district court, asserting federal question jurisdiction under 28 U.S.C. § 1331 arising from the need to interpret the WPT.

In the cases before Judge Gray, the oil companies moved for summary judgment, with Long Beach moving for dismissal based on lack of federal subject matter jurisdiction and on abstention grounds. After the parties submitted briefs on an expedited schedule, oral argument was heard on December 15, 1983. In the event the court found an absence of federal question jurisdiction, the non-diverse parties agreed by affidavit to be bound by the court's decision on the merits in the diversity case. Judge Gray subsequently granted Long Beach's motion to dismiss all claims, and sua sponte remanded the state court action.

Before Judge Real, Long Beach similarly moved to dismiss Shell California's complaint on the basis of no federal question jurisdiction. That motion was denied. On cross-motions for summary judgment, Judge Real granted Shell California's motion, holding that the WPT was an excise tax properly charged against profits under the Contractors' Agreement.

## II

■ Judge Gray held that federal subject matter jurisdiction over Union's claim under 28 U.S.C. § 1331 was lacking because it presented "no substantial federal question." *Mobil*, 578 F.Supp. at 1199. That holding was based on two decisions. First, he found that Long Beach had conceded that the WPT was an excise tax, leaving only a state law question of contract interpretation. *Id.* Second, he concluded that Union's claim presented only a potential defense to a state breach of contract claim, which would not permit assertion of federal jurisdiction under *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 672–74, 70 S.Ct. 876, 879–80, 94 L.Ed. 1194 (1950) (*Skelly Oil*). *Mobil*, 578 F.Supp. at 1199–1200. Judge Real held, to the contrary, that there was federal question jurisdiction over Shell California's almost identical complaint, without outlining his reasoning. The question of federal subject matter jurisdiction is reviewable de novo. *Clayton v. Republic Airlines*, 716 F.2d 729, 730 (9th Cir.1983).

■ Federal question jurisdiction must be established by applying the well-pleaded complaint rule. *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9–10 & n. 9, 103 S.Ct. 2841, 2846–47 & n. 9, 77 L.Ed.2d 420 (1983) (*Franchise Tax*). Under this rule, a complaint for coercive relief properly invokes federal jurisdiction where its well-pleaded allegations raise a substantial issue of federal law. *See Hunter v. United Van Lines*, 746 F.2d 635, 639 (9th Cir.1984) (*Hunter*). A complaint is not well-pleaded

if it includes a federal question that can be raised properly only as an anticipated defense. *See Franchise Tax*, 463 U.S. at 10, 103 S.Ct. at 2846; *McKeel v. Islamic Republic of Iran*, 722 F.2d 582, 586 (9th Cir. 1983), *cert. denied*, —— U.S. ——, 105 S.Ct. 243, 83 L.Ed.2d 182 (1984).

■ A case may "arise under" federal law for purposes of 28 U.S.C. § 1331 even when a state cause of action is asserted, however, "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax*, 463 U.S. at 9, 103 S.Ct. at 2846, *citing Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199–202, 41 S.Ct. 243, 244–246, 65 L.Ed. 577 (1921) (*Smith*). The question then is whether plaintiff's "right to relief under state law requires resolution of a substantial question of federal law in dispute." *Franchise Tax*, 463 U.S. at 13, 103 S.Ct. at 2848.

■ Application of the well-pleaded complaint rule in cases where declaratory relief is sought is complicated by the fact that "[t]he Declaratory Judgment Act, 28 U.S.C. § 2201, is a procedural device only; it does not confer an independent basis of jurisdiction on the federal court." *Alton Box Board Co. v. Esprit De Corp.*, 682 F.2d 1267, 1274 (9th Cir.1982) (*Alton Box*). Essentially, a declaratory relief action brings an issue before the court that otherwise might need to await a coercive action brought by the declaratory relief defendant. To decide whether a well-pleaded complaint for declaratory relief properly asserts a substantial federal claim, we must determine whether, absent the availability of declaratory relief, the instant case could nonetheless have been brought in federal court. In so deciding, it is helpful to analyze the nature of the assumed coercive action by the defendant. *See Franchise Tax*, 463 U.S. at 19 & n. 19, 103 S.Ct. at 2851 & n. 19.

■ The complaints of Union and Shell California assert that the characterization of WPT as a matter of federal law is disputed. In its answer, Long Beach admitted that the WPT is, by its terms, a federal excise tax, and in its briefs to this court, it argues that it never disputed that characterization. We find it unnecessary to resolve this debate. Under *Franchise Tax*, original federal question jurisdiction is unavailable where the cause of action is a creature of state law, unless it appears: (1) that the federal issue constitutes a necessary element of a well-pleaded state-law claim for coercive relief brought to resolve the matter in dispute, *Franchise Tax*, 463 U.S. at 13, 103 S.Ct. at 2848; (2) that the federal issue is substantial, *id.*; *accord Hunter*, 746 F.2d at 646; and (3) that the federal issue is "in dispute between the parties." *Franchise Tax*, 463 U.S. at 13, 103 S.Ct. at 2848; *accord Hunter*, 746 F.2d at 643 n. 5. Since, as we find hereafter, resolution of the first issue is dispositive, we need not decide the issues of the substantiality and disputedness of the federal issue posed here.

■ The dispositive issue here is whether the federal issue would appear as a necessary element of a well-pleaded complaint filed by any proper party in a coercive action to enforce the rights in dispute. *See Franchise Tax*, 463 U.S. at 19 & n. 19, 103 S.Ct. at 2851 & n. 19; *Skelly Oil*, 339 U.S. at 672, 70 S.Ct. at 879. In this case, Long Beach is the only party claiming that its legal interests have been violated as the result of the oil companies' withholding of payments Long Beach alleges are due under the Contractors' Agreement. Long Beach, therefore, is the only party in a position to file a coercive action over the matters in controversy. Thus, we must ascertain whether a well-pleaded complaint filed by Long Beach to enforce its contractual rights would raise, as a necessary element of its claim, the characterization of the WPT as a matter of federal law. The resolution of this issue depends on a fair reading of the two declaratory judgment complaints as to the nature of the parties' dispute.

In this case, we analyze the federal jurisdictional issue by determining whether any hypothetical coercive suit by the declarato-

ry judgment defendant—Long Beach—would necessarily present a federal question. We begin by examining the declaratory judgment complaints to determine whether the WPT's interpretation presents a substantial federal question on the merits. Union's complaint alleges that Long Beach disagreed with Union's practice of charging the amounts Union paid under the WPT against the Net Profits Account established under the Contractors' Agreement. Union therefore sought a declaratory judgment (1) that the WPT is an excise tax (chargeable against the net profit account), and (2) that Union's accounting methods did not violate the Contractors' Agreement. Shell California's complaint contains no significantly different allegations or claims for relief.

We conclude that no federal question would be presented by any well-pleaded complaint filed by Long Beach. Any possible coercive suit by Long Beach would focus entirely on an interpretation of a private contract. These declaratory judgment complaints highlight that the dispute is over how the WPT is to be characterized solely for purposes of the Contractors' Agreement.

There is no longer any question about how to characterize the WPT for purposes of the federal statute itself. Moreover, looking to Long Beach's later concessions, we observe that the statute clearly states that the WPT is an "excise tax." *See* 26 U.S.C. § 4986(a). *See also Tenneco West, Inc. v. Marathon Oil Co.*, 756 F.2d 769, 771–73 & n. 2 (9th Cir.1985). In addition, there is no question concerning who must initially pay the tax or how it is to be calculated. Rather, the dispute requires interpretation of an arguably ambiguous contract signed in 1965 in light of a subsequently passed statute that provides for a taxing scheme Long Beach asserts was unforeseen when the contract was entered.

To be sure, whether or not the WPT is an excise tax for purposes of federal law may be relevant in a coercive action brought by Long Beach on the contract. But that question is merely collateral to the question before us. The central issue as indicated in the complaints is whether the WPT is an excise tax for purposes of article 18 of the Contractors' Agreement. The nature of the WPT, if it arises, would arise as a defense to Long Beach's coercive action. Thus, it is not properly the basis for the exercise of federal question jurisdiction. Under the holdings of *Skelly Oil* and *Alton Box*, we therefore find no basis for asserting jurisdiction under 28 U.S.C. § 1331.

### III

■■■ Although Judge Gray acknowledged that the actions filed by Mobil, Exxon, Shell, and Texaco were within the court's diversity jurisdiction, 578 F.Supp. at 1200–01, he believed that *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (*Colorado River*), gave him discretion to dismiss these actions in favor of the state court proceedings. 578 F.Supp. at 1201–03. We review abstention decisions using an abuse of discretion test. *C–Y Development Co. v. City of Redlands*, 703 F.2d 375, 377 (9th Cir.1983). We point out, however, that in these cases this abuse of discretion standard should not be confused

> with the broader abuse of discretion standard applicable in other areas, such as rulings on certain evidentiary questions and posttrial motions. [Rather,] ... in cases involving abstention, discretion must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved. A district court should abstain only in the "exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." Thus, ... there is little or no discretion to abstain in a case which does not meet traditional abstention requirements.

*Id.* (citations omitted). We employ identical standards when reviewing district court dismissals based on *Colorado River* principles of "wise judicial administration." *See*

*Moses H. Cone Memorial Hospital v. Mercury Construction,* 460 U.S. 1, 19, 103 S.Ct. 927, 939, 74 L.Ed.2d 765 (1983) (*Cone*); *cf. United States v. Adair,* 723 F.2d 1394, 1402–03 (9th Cir.1983) (when reviewing decision *not* to dismiss, traditional abuse of discretion test applied), *cert. denied,* —— U.S. ——, 104 S.Ct. 3536, 82 L.Ed.2d 841 (1984).

In *Colorado River,* the Court described three general categories suitable for abstention: (1) when a state court adjudication of state law might obviate the need to address a federal constitutional question or present it in a different posture, 424 U.S. at 814, 96 S.Ct. at 1244; (2) when a difficult and important question of state law "of substantial public import" is presented, *id.;* and (3) when a federal injunction of pending state criminal or analogous proceedings is sought, *id.* at 816, 96 S.Ct. at 1245. The Court then delineated a further category outside the general abstention group in which "considerations of '[w]ise judicial administration' " might permit, in certain limited circumstances, dismissal of a federal suit because of a contemporaneous state proceeding. *Id.* at 817, 96 S.Ct. at 1246, *quoting Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952). It was this latter category upon which the district judge relied in dismissing the actions of the oil companies that otherwise satisfied the requirements for diversity jurisdiction.

In the *Colorado River* case, the Supreme Court first observed that there is no general bar to parallel actions in state and federal court, reiterating "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." 424 U.S. at 817, 96 S.Ct. at 1246. The Court emphasized that the circumstances that would permit dismissal merely because of a parallel state proceeding "are considerably more limited than the circumstances appropriate for abstention," requiring "exceptional" circumstances. *Id.* at 818, 96 S.Ct. at 1246. "Only the clearest of justifications will warrant dismissal." *Id.* at 819, 96 S.Ct. at 1247.

The Court then proceeded to describe several factors that might suggest such exceptional circumstances, including whether the state court had already assumed jurisdiction over disputed property, the prospect of inconvenience because of a distant forum, the prospect of piecemeal adjudication, and "the order in which jurisdiction was obtained by the concurrent forums." *Id.* at 818, 96 S.Ct. at 1247. A balancing process, rather than a "mechanical checklist," is to be employed in reaching a decision whether to dismiss, "with the balance heavily weighted in favor of the exercise of jurisdiction." *Cone,* 460 U.S. at 16, 103 S.Ct. at 937.

█ The first two of these factors—jurisdiction over a *res* and potential inconvenience—are inapplicable in this case. The district court instead relied upon the latter two factors—potentially piecemeal adjudication and the order in which jurisdiction was obtained—as well as *Shell Oil Co. v. Frusetta,* 290 F.2d 689 (9th Cir.1961) (*Shell Oil*), and *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (*Younger*). The question before us is whether these reasons meet *Colorado River's* exceptional circumstance requirement.

The district court cited *Shell Oil* for the proposition that federal declaratory relief is inappropriate if the state court action would not be removable. 578 F.Supp. at 1202. Reliance on *Shell Oil* may be hazardous. In the two decades since we decided *Shell Oil,* significant case law has been generated by the Supreme Court. *See* 17 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4247 at 508 (1978) (cases prior to 1976 "are of little precedential value" because *Colorado River* halted trend toward frequent dismissals). In *Shell Oil,* the declaratory relief claim dismissed was sought in the midst of ongoing state litigation begun three years earlier. Under similar circumstances, we wisely interpreted *Shell Oil* as authority to dismiss in order to bar fragmentation of a case between federal and state courts. *See Adkins v. United States District Court,*

431 F.2d 859, 860 (9th Cir.), *cert. dismissed,* 400 U.S. 921, 91 S.Ct. 181, 27 L.Ed.2d 182 (1970). Given the non-diverse parties' stipulation to be bound by the district court's construction of the agreement, and the probable conclusive effect the court's decision would have had on Long Beach's state court action, no such fragmentation was threatened here. Hence, the district court's concern that retention of the diversity cases would cause piecemeal adjudication was unwarranted.

■ The district court next criticized the oil companies' actions as encouraging a race to the courthouse, again citing *Shell Oil,* and held that the state court action should be treated as first filed, even though it was not. 578 F.Supp. at 1202. This recharacterization was an abuse of discretion. The proper analysis, as directed by *Cone,* requires a determination whether "substantial progress" had occurred in the federal court. 460 U.S. at 16, 103 S.Ct. at 937. The issues before the district court had been fully briefed and were ripe for resolution of the entire dispute; the state action, meanwhile, had been stayed. Under these circumstances, *Cone* dictates that dismissal was inappropriate. *Id.* at 21–22 & n. 26, 103 S.Ct. at 939–940 & n. 26; *see also Arizona v. San Carlos Apache Tribe,* 463 U.S. 545, 569, 103 S.Ct. 3201, 3215, 77 L.Ed.2d 837 (1983) ("federal courts need not defer to the state proceedings if the state courts" have stayed their actions).

Even if this were a race to the courthouse, there is no reason suggested for giving priority to the state. We have recently held that it was an abuse of discretion to stay a federal action in favor of an "almost simultaneously" filed state court action when "the state action was not at an advanced stage nor more actively pursued by plaintiffs." *Herrington v. County of Sonoma,* 706 F.2d 938, 940 (9th Cir.1983). We find this case indistinguishable.

■ Nor are we convinced by the district court's final two grounds for dismissal—that it has discretion in granting declaratory relief under *Shell Oil* and that *Younger* principles were applicable. 578 F.Supp. at 1202–03. Although the court has discretion to grant or deny relief authorized by the Declaratory Judgment Act, 28 U.S.C. § 2201, where the court's denial of relief is based on principles of "wise judicial administration," its discretion is limited, and must be exercised within the narrow boundaries drawn by *Colorado River. See Cone,* 460 U.S. at 19, 103 S.Ct. at 939. *Colorado River* itself involved a complaint for declaratory relief. *Id.* at 13, 103 S.Ct. at 935. Where, as here, dismissal is plainly inconsistent with the applicable legal principles, the district court has not acted within its discretion.

■ *Younger* is inapplicable because no state proceedings such as a criminal prosecution or similar proceeding are being enjoined. *Younger* only bars federal intervention in state proceedings involving "important state interests" that are "vital to the operation of state government." *Miofsky v. Superior Court,* 703 F.2d 332, 337 (9th Cir.1983). Here the state is acting solely in its proprietary capacity, not as sovereign. No important state law question or sensitive area of state policy is at issue, such as the water rights involved in *Colorado River.* The only state interest Long Beach asserts is its claim for money damages, which is clearly insufficient to support dismissal. Indeed, no attempt to enjoin the state proceedings was ever undertaken, a crucial factor in *Younger.* As the Supreme Court has stated, *Younger's* "principles of comity and federalism do not require that a federal court abandon jurisdiction it has properly acquired simply because a similar suit is later filed in a state court." *Town of Lockport v. Citizens for Community Action at the Local Level, Inc.,* 430 U.S. 259, 264 n. 8, 97 S.Ct. 1047, 1051 n. 8, 51 L.Ed.2d 313 (1977).

We see nothing invidious about a plaintiff filing suit in federal court before his opponent files a similar suit in state court. The district court apparently believed oth-

erwise, observing that "[f]or reasons best known to themselves, the [various] oil companies ... preferred to be in federal court." 578 F.Supp. at 1201. For those plaintiffs with diversity, that preference is their right under 28 U.S.C. § 1332(a). Indeed, the choice of a federal forum is the very essence of diversity jurisdiction. Thus, Long Beach's attempts to characterize the federal diversity suits as "reactive" and "vexatious" are unwarranted. Long Beach is no more entitled to its choice of forum in this contract action than Mobil, Exxon, Shell, or Texaco.

> As the Supreme Court has emphasized, our task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist "exceptional" circumstances, the "clearest of justifications," that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction.

*Cone*, 460 U.S. at 25–26, 103 S.Ct. at 942–943 (emphasis in original). No exceptional circumstances as required by *Colorado River* are present. Long Beach's principal assertion is that the federal action is a vexatious attempt to remove a non-removable action. But the district court acknowledged that diversity jurisdiction was properly asserted. 578 F.Supp. at 1201. The entire dispute, which was fully briefed, could have been resolved promptly. Moreover, the federal judge was the same one already adjudicating other somewhat related disputes among these parties. Granting Long Beach's preference in the choice of forum based on *Colorado River*'s concerns was an abuse of the district court's limited discretion.

The appeal in No. 84–5552 is AFFIRMED; the appeals in Nos. 84–5546, 84–5547, 84–5584, and 84–5595 are REVERSED AND REMANDED; the appeal in No. 84–5750 is REVERSED.