**BURLINGTON NORTHERN RAILROAD COMPANY; Missouri Pacific Railroad Company; The Kansas City Southern Railway Company; The Kansas and Missouri Railway and Terminal Company; Union Pacific Railroad Company; St. Joseph and Grand Island Railroad Company, a subsidiary of Union Pacific Railroad Company; and Missouri-Kansas-Texas Railroad Company, Plaintiffs-Appellants,**

v.

**C. Michael LENNEN, Secretary of Revenue of the Department of Revenue of the State of Kansas; Philip W. Martin, Director, Division of Property Valuation of the Department of Revenue of the State of Kansas; and The Department of Revenue of the State of Kansas, an administrative agency of the State of Kansas, Defendants-Appellees,**

**Bourbon, Decatur, Elk, Franklin, Gove, Lane, Linn, Marshall, Miami, Norton, Phillips and Pratt Counties, Kansas, Intervenors.**

No. 82–2534.

United States Court of Appeals, Tenth Circuit.

Aug. 25, 1983.

---

Everett B. Gibson, Memphis, Tenn. (James W. McBride and Marion F. White, of Laughlin, Halle, Clark, Gibson & McBride, Memphis, Tenn., F. Kent Kalb, Senior Tax Counsel, Union Pacific Railroad Co., Broomfield, Colo., Chester A. Arterburn, Jr. of Sabatini, Waggener, Vincent & Arterburn, Topeka, Kan., and Robert C. Foulston of Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., with him on brief), for plaintiffs-appellants.

Carol B. Bonebrake, Kansas Dept. of Revenue, Topeka, Kan. (James J. McGannon of Regan & McGannon, Wichita, Kan., with her on brief), for defendants-appellees.

Robert J. O'Connor of Hershberger, Patterson, Jones & Roth, Wichita, Kan. (Donald J. Horttor and Grant M. Glenn of Cosgrove, Webb & Oman, Topeka, Kan., with him on brief), for intervenors Bourbon, Decatur, Elk, Franklin, Gove, Lane, Linn, Marshall, Miami, Norton, Phillips, and Pratt Counties, Kan.

Robert C. Foulston and Jay F. Fowler of Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., filed a brief for the Atchison, Topeka & Santa Fe R. Co., Chicago & North Western Transp. Co., Chicago, Rock Island & Pacific R. Co., William M. Gibbons, Trustee, Kansas City Terminal R. Co., and St. Louis Southwestern R. Co., as amici curiae.

Before McKAY, LOGAN and SEYMOUR, Circuit Judges.

LOGAN, Circuit Judge.

█ This is an appeal from an order of the district court denying a preliminary injunction sought by the railroad plaintiffs under 49 U.S.C. § 11503 ("§ 306").[1]

The railroads sought to prevent the Kansas taxing authorities from collecting 1982 ad valorem taxes, which the railroads asserted were levied against them in violation of § 306. The railroads contended that they were entitled to "equalization" relief because commercial and industrial property in Kansas was assessed at a median ratio of 11.7% of true market value, while rail transportation property was assessed at no less than 30% of true market value. The trial court granted relief on the equalization issue, allowing the railroads to pay only 39% of their 1982 taxes pending final disposition of the case, which is being held in abeyance pending this Court's resolution of equalization issues in similar cases involving prior tax years. The equalization issue is not involved in the instant appeal.

The railroads also contended that they were entitled to "valuation" relief because their properties were valued for ad valorem tax purposes at more than true fair market value. The court declined to grant the railroads injunctive relief on the valuation issue, holding that it had no jurisdiction to hear issues of railroad property valuation except when it appears that the state has artificially raised valuations to retaliate against railroads that have obtained equalization relief. The issue in this appeal is the correctness of the trial court's determination.

This Court issued an injunction against collection of the taxes until we could hear argument and deliberate. We ordered the appeal accelerated, heard argument, and now determine the merits of the appeal.

Section 306 provides that a state is engaging in unlawful tax discrimination if it assesses

"transportation property at a value which bears a higher ratio to the true market value of such transportation property than the ratio which the assessed value of all other commercial and industrial property in the same assessment jurisdiction bears to the true market value of all such other commercial and industrial property."

§ 306(1)(a), 90 Stat. at 54.

The parties agree that Congress intended to equalize assessment ratios between railroad and other commercial and industrial properties, although differences between them on what properties are compared and other applications of the act in Kansas are before us in other appeals. The parties disagree on whether the act gives the federal district courts jurisdiction to probe into the assessment process itself to determine whether the state taxing authorities have indeed arrived at the "true market value"

---

1. Enacted originally as § 306 of Pub.L. No. 94–210, 90 Stat. 31, 54 (1976), the section was codified in 1978 as part of the revised Interstate Commerce Act at 49 U.S.C. § 11503. There are some differences in the language between the original section and the codification. This Court, in *Atchison, Topeka & Santa Fe Railway*

*v. Lennen,* 640 F.2d 255, 258 (10th Cir.1981), held that the original § 306 language governs if there are significant differences. The section will be referred to hereafter as § 306, consistent with the treatment in the trial court and the parties' briefs.

of the railroads' property. The railroads offer arguments based upon statutory construction and legislative history that Congress intended the district courts to evaluate the valuation methods and conclusions of state taxing authorities when considering claims of discriminatory taxation. They say that the statute requires comparison of assessments based upon the true market values of different classes of property and that a court cannot possibly determine whether relief is appropriate without being sure that apples are being compared to apples—that is, that the true market value of the railroad property is being compared to the true market value of other commercial and industrial property.

While the railroads' interpretation is a plausible one, we do not think that it is the proper interpretation. Section 306 was enacted to prevent both de jure and de facto discrimination against railroads in the collection of ad valorem taxes. One method of discrimination, prohibited by § 306(1)(c), is expressly imposing a different tax rate on rail property than is imposed on other commercial property. This is de jure discrimination. The most common form of de facto discrimination is imposing the same percentage rate of tax on both classes of property, but applying that rate to a value less than the true market value of other commercial and industrial property while applying it to the full true market value of rail property. The railroads ask us to apply § 306 to another potential form of discrimination, also de facto: taxing both classes of property at the same rate, but assessing rail property at a value higher than its true market value. Relief from this form is what the trial court referred to as valuation relief. *Ogilvie v. State Board of Equalization,* 657 F.2d 204, 210 (8th Cir.), *cert. denied,* 454 U.S. 1086, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981), contains a broad statement that the purpose of § 306 was to prevent tax discrimination against railroads "in any form whatsoever." But we think it is by no means clear that § 306 was intended to provide relief from every form of de facto discrimination. We believe that important considerations support the trial

court's conclusion that the valuation relief sought by the railroads is not provided by § 306.

The language of § 306 does not provide explicit guidance on the range of potential de facto discrimination district courts have the power to remedy. We note, however, that the statute sets forth a specific method of proof of the market value of commercial and industrial property, *see* § 306(2)(e), but contains no discussion of a proper method for valuing rail property. While this absence of specific direction is not dispositive, its significance is underscored by the facts in this case. The railroads' expert would value the rail property in question by essentially the same method—unitary valuation—the state of Kansas employs. It is within the context of this method that the expert disagrees with some of the state's calculations of various factors. While Congress specifically addressed the valuation of commercial property, it did not address the complex problems associated with the valuation of rail property.

The absence of specific statutory direction makes an examination of the legislative history of § 306 appropriate. Such an examination militates against the railroads' position. The district court properly included in the scope of its review of the legislative history predecessors to the bill that ultimately became § 306. *See Arizona v. Atchison, Topeka & Santa Fe Railroad,* 656 F.2d 398, 404 n. 6 (9th Cir.1981). We have examined every item of legislative history cited by the district court and every item cited to us by the parties. We think that the district court's opinion fairly recited the pertinent legislative history, which we will not repeat, and that the district court's conclusion was correct. Despite Congress' extensive consideration over a number of years of the problems of tax discrimination, no report or hearing specifically addresses the problems or benefits of involving the district courts in the intricacies of the process of arriving at the valuation of rail property. The history suggests that equalization, not valuation, relief was

intended to be made available to the railroads. *See* S.Rep. No. 585, 94th Cong., 1st Sess. 139 (1975); S.Rep. No. 1483, 90th Cong., 2d Sess. 22, 23 (1968).

■ Finally, we consider that § 306 was passed as an express exception to the general proscription on federal interference with state taxation contained in the Tax Anti-Injunction Act, 28 U.S.C. § 1341. Section 306 obviated the need for the railroads to meet § 1341's required showing that a plain, speedy, and efficient remedy is not available in the courts of the state before the district court can act. There is no express indication in § 306 or in the legislative history that Congress intended the railroads to escape the general noninterference rule of § 1341 to the extent that they could challenge the manner in which state assessment officials arrived at the fair market value of their property in federal court on a yearly basis. Such a rule would impose significant burdens on district courts and would substantially thwart the tax collection process of states and their subdivisions. Absent a specific directive from Congress, we are unwilling to infer that it intended district courts to sit as state tax assessment boards for railroad property.

■ The district court declared that it would grant relief under § 306 if the railroad could make a strong showing that state authorities deliberately overvalued the railroads' property in retaliation for past equalization relief the railroads had secured. We agree, but we would hold that a suit can be maintained whenever a railroad can make a strong showing of a purposeful overvaluation of a particular railroad's property with discriminatory intent, whether or not the overvaluation was made in retaliation for other litigation. We emphasize, however, that a strong prima facie case of retaliation or intentional discrimination must be made. Here, there were substantial increases in the property valuations for most of the railroads involved in this appeal between the 1981 and 1982 tax years. The trial court found, however, that the procedures the state used to arrive at the 1982 unit valuations were identical to those it used over a long prior period and identical to those used to value the properties of the other railroads in Kansas in 1982. We have examined the record and are satisfied that the railroads did not make a sufficient showing of discriminatory overvaluation.

We therefore affirm the district court's denial of injunctive relief. Because we stayed the payment of the portion of the taxes at issue here pending decision of this appeal, no penalty shall be assessed against the railroads if they pay the taxes that they have withheld because of our grant of a temporary injunction within seven days after the issuance of the mandate in this case.

AFFIRMED.