The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, et al., Plaintiffs-Appellants,

v.

BOARD OF EQUALIZATION OF the STATE OF CALIFORNIA, et al., Defendants-Appellees.

SOUTHERN PACIFIC TRANSPORTATION COMPANY, et al., Plaintiffs-Appellants,

v.

BOARD OF EQUALIZATION OF the STATE OF CALIFORNIA, et al., Defendants-Appellees.

TRAILER TRAIN COMPANY, et al., Plaintiffs-Appellants,

v.

BOARD OF EQUALIZATION OF the STATE OF CALIFORNIA, et al., Defendants-Appellees.

Nos. 85–1554 to 85–1556.

United States Court of Appeals, Ninth Circuit.

Argued July 8, 1985.

Submitted Aug. 28, 1985.

Decided July 31, 1986.

See also 538 F.Supp. 509.

Peter W. Davis, Crosby, Heafey, Roache & May, Oakland, Cal., Arnold I. Weber, William E. Saul, Claude E. Kolm, Weyman I. Lundquist, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for plaintiffs-appellants.

Dirk M. Schenkkan, Howard, Rice, Nemerovski, Canady, Robertson & Falk, Julian O. Standen, Deputy Atty. Gen., San Francisco, Cal., for defendants-appellees.

Before FERGUSON, NORRIS, and WIGGINS, Circuit Judges.

**FERGUSON, Circuit Judge:**

The plaintiffs, California rail lines and railroad car companies ("railroads"), appeal from the district court's dismissal of their challenge to the valuation of their rail transportation property by the defendant, the California Board of Equalization. The valuation challenge constitutes one phase of a multiphase trial in which the railroads claim discriminatory state taxation in violation of the Railroad Revitalization and Regulatory Reform Act of 1976,[1] 49 U.S.C. § 11503 ("4-R Act").

The district court dismissed the valuation challenge for lack of jurisdiction, finding that the railroads were not entitled to relief under the 4-R Act. *Trailer Train Co. v. State Board of Equalization,* No. CV-81-4365-SW (N.D.Cal. June 22, 1984). We find that a valuation challenge states a claim under the 4-R Act, and we reverse with instructions to abstain from consideration of the railroads' valuation challenge pending finality of prior state court actions involving the merits of the valuation issue under California law.

I.

In 1976, Congress passed the 4-R Act to provide railroads with some protection from the common state practice of discriminatorily taxing rail transportation property. The 4-R Act, 49 U.S.C. § 11503, prohibits a state from applying a higher ratio of assessed value to true market value for railroads than the ratio of assessed value to true market value for other commercial and industrial property in the same assessment jurisdiction.[2] *Id.* § 11503(b)(1). Sec-

1. Enacted originally as § 306 of Pub.L. No. 94-210, 90. Stat. 31, 54 (1976), the section was codified in 1978 as part of the revised Interstate Commerce Act at 49 U.S.C. § 11503.

2. For California to comply with the 4-R Act, it must assess railway transportation property at the same one-to-one ratio applied to other commercial and industrial property. Section 11503 does not require a state to use any particular assessment or valuation method. *See* S.Rep. No. 1483, 90th Cong., 2d Sess. 22 (1968). In California, all property is assessed at one hundred percent of its true market value, that is, a ratio of one to one of assessed value to true market value.

The purpose of the Act was to eliminate the prevalent state practice of applying a higher ratio of assessed rail transportation property to true market value than for other business property in the same assessment jurisdiction as a way to discriminate against railroads. *See* S.Rep. No. 585, 94th Cong., 1st Sess. 139 (1975); S.Rep. No. 630, 91st Cong., 1st Sess. 5 (1969); .S.Rep. No. 1483, 90th Cong., 2d Sess. 4, 22, 23 (1968); S.Rep. No. 445, 87th Cong., 1st Sess. 458 (1961); *see also Ogilvie v. State Board of Equalization,* 657 F.2d 204, 206-07 (8th Cir.), *cert.*

tion 11503(c) confers jurisdiction on the United States district courts to grant injunctive relief if the ratio of assessed to true market value for railroads exceeds the ratio of assessed to true market value for other commercial and industrial property by at least five percent. *Id.* § 11503(b)(1).

The California Board of Equalization issues an annual property tax on all commercial and industrial property, real and personal, in the state. The Board uses a complex scheme to calculate the tax for all commercial and industrial property. First, the Board determines the true market value of each company's property. *See* Cal. Rev. & Tax. Code §§ 110, 401.[3] The Board then "assesses" the taxable property at its full market value,[4] Cal.Rev. & Tax.Code § 401, and applies the tax rate to the assessed amount to determine the tax due. Taxpayers are entitled to administrative and judicial review of the Board's valuation of assessed properties. *See id.* §§ 741–758,

4808, 5096, 5140–5152; Cal. Admin.Code 18 §§ 904–916.[5]

This action arose from the Board's valuation and assessment of railway property for the tax years 1975 through 1983. The railroads complied with the administrative review procedures and then, between 1978 and 1984, filed several refund actions in state courts.[6] Each action alleged that the Board overvalued the rail transportation property. At the time this action was filed, three of the state court actions had been tried (*Southern Pacific* (No. 3 Civ. 23555), *Trailer Train,* and *Atchison*). Two, decided in favor of the Board, were before the California Court of Appeal (*Southern Pacific* (No. 3 Civ. 23555) and *Trailer Train*). The remaining cases were pending before the trial court.

The plaintiffs filed actions in federal district court between 1981 and 1983, alleging discriminatory taxation in violation of the 4–R Act. The suits challenged the Board's valuations and methodology for the same

---

denied, 454 U.S. 1086, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981); *Hearings on H.R. 16245 Before the Subcomm. on Transportation and Aeronautics of the House Comm. on Interstate and Foreign Commerce,* 91st Cong., 1st Sess. 138–39 (1970) (Testimony of Philip M. Lanier); Appendix B to S.Rep. No. 1483, 90th Cong., 2d Sess. 22 (1968).

**3.** The Board uses the "unitary" valuation method: It first determines the value of all the railroad's property throughout the country and then taxes the property allocable to California.

**4.** States arrive at an "assessment" by multiplying the true market value by a certain percentage. States differ on the percentage used, but in California property is assessed at one hundred percent of its true market value. Cal. Rev. & Tax. Code § 401.

**5.** The Board valuates and assesses annually the property of railroads. Cal. Const. Art. XIII, § 19; Cal. Rev. & Tax. Code § 721. After the Board informs the railroads of the annual valuation, they may request reconsideration by filing a Petition for Reassessment. Cal. Rev. & Tax. Code §§ 731, 741. The Board schedules an administrative hearing on the Petition. *Id.* § 742. The administrative law judge issues a decision and prepares written findings. *Id.* § 744(a).

If the decision is adverse to the taxpayer, the taxpayer pays the assessed tax to each applicable county. Within four years of the denial of the Petition for Reassessment, the taxpayer may

file a claim for refund in each county. *Id.* §§ 5096, 5097. If the county board of supervisors or city council denies the claim for refund, the taxpayer may file a suit for refund in state court. *Id.* §§ 5140, 5141; *see, e.g., Pacific Gas & Electric Co. v. State Board of Equalization,* 27 Cal.3d 277, 279, 284, 611 P.2d 463, 464, 467, 165 Cal.Rptr. 122, 123, 126 (1980).

**6.** *Trailer Train Co. v. State Board of Equalization,* No. A027732 (1st App.Dist.Cal., complaint filed Aug. 31, 1978); *Southern Pacific Transportation Co. v. State Board of Equalization,* 3 Civ. 23555 (3d App.Dist.Cal., complaint filed May 10, 1979); *Atchison, Topeka & Santa Fe Railway Co. v. State Board of Equalization,* Nos. 761819, 778986, 788219 (consolidated), (S.F.Super.Ct. Cal., complaints filed Dec. 26, 1979, Apr. 1, 1981, Dec. 7, 1981).

The other cases are pending. *Pullman Leasing Co. v. State Board of Equalization,* No. 824953 (S.F.Super.Ct.Cal., filed June 5, 1984); *General American Transportation Corp. v. State Board of Equalization,* No. 824899 (S.F.Super.Ct. Cal., filed June 4, 1984); *ACF Industries Inc. v. State Board of Equalization,* No. 824599 (S.F.Super.Ct.Cal., filed May 25, 1984); *Southern Pacific Transportation Co. v. State Board of Equalization,* No. 810433 (S.F.Super.Ct.Cal., filed June 14, 1983); *Union Tank Car Co. v. State Board of Equalization,* No. 840231 (S.F.Super.Ct.Cal., filed May 16, 1985); *Union Tank Car Co. v. State Board of Equalization,* No. 825076 (S.F.Super.Ct. Cal., filed June 7, 1984).

years that are at issue in the state courts. The district court consolidated the actions [7] and, in June 1983, divided the trial into three phases. Phase I, tried in 1984, attacked the Board's valuation methodology and alleged that it produced a ratio of assessed value to true market value for rail transportation property higher than the ratio of assessed value to true market value for other commercial and industrial property in California.[8] In Phase II, the subject of this appeal, the railroads attack the Board's valuation itself and therefore seek a redetermination of the true market value for their properties. Phase III, which is to cover any remaining issues, is still in the district court.

At the conclusion of Phase I, the Board moved to dismiss Phase II, arguing that the 4–R Act does not allow relief for the valuation challenge. The railroads claimed that the true market value calculated by the Board was higher than the real true market value and therefore they paid higher taxes proportionately than other commercial and industrial property owners. The railroads argued that section 11503 provided a remedy for discrimination that results from overvaluation of rail transportation property, caused by generally not applying the methodology correctly or by negligently or intentionally inflating figures.

After a hearing on the motion, the district court dismissed plaintiffs' valuation claims. The court concluded that section 11503 allowed it only to evaluate the methodology and to equalize the ratio of assessed value to true market value of railroad properties with the ratio of assessed value to true market value of other commercial and industrial property. This inquiry had been the subject of Phase I. The district court certified its order of dismissal under 28 U.S.C. § 1292(b) as an appealable interlocutory order. This court granted

the railroads' petitions for permission to appeal.

## II.

We conclude that the district court erred in holding that the railroads' valuation challenge was outside the scope of the 4–R Act. The 4–R Act gives federal district courts the power to enjoin certain discriminatory state taxation practices, 49 U.S.C. § 11503(c). Section 11503 specifically refers to the "true market value" of rail property and identifies that factor as an integral element of the statutory test for discriminatory taxation. The normal presumption is that true market value—like all factual issues bearing on a claimed statutory violation—would be open to dispute and proof before a federal court hearing a 4–R Act claim. Therefore, the statute confers federal jurisdiction to hear challenges to the state's calculation of the railroad property's true market value.

This conclusion is supported by two specific references to "true market value" in this section. First, section 11503(c) expressly provides that the "burden of proof with respect to the determination of assessed value and true market value shall be that declared by applicable State law." This reference clearly indicates Congress's intention that the question of true market value would be subject to litigation in cases under the Act. Second, the statute sets forth a specific method of proof for establishing the market value of commercial and industrial property. See 49 U.S.C. § 11503(c).

We do not believe that Congress' failure to address specifically the method of proof in rail transportation property valuations precludes a federal court from determining the market value of rail transportation property in an appropriate case. Instead, Congress more probably recognized the dif-

7. *Trailer Train Co. v. State Board of Equalization*, No. CV–81–4365–SW (N.D.Cal. June 22, 1984).

8. In Phase I the district court conducted a thorough study of the Board's methodology, including a comparison of the methodology for rail-way property and that for other commercial and industrial property. *Southern Pacific Transportation Co. v. California*, No. CV–81–4365–SW (N.D.Cal. Apr. 4, 1984). The court found no discrimination.

ference between calculating a "true market value" for a specific taxpayer and for an entire industry. The former determination involves only one property; the latter involves "all other commercial and industrial property." In order to indicate that an averaging method of some sort was acceptable for determining "true market value," Congress specifically approved one method of such proof. There was no need to specify an acceptable method of proof for the true market value for the individual litigant's rail transportation properties.

The purposes of the 4–R Act also support the power of the district court to hear the valuation claim involved here. Congress enacted the statute to end what it perceived to be the pervasive and longstanding practice of discriminatory taxation of railroads. Given the important remedial objective of the legislation, it is implausible to assert that the Act was not intended to provide relief from every form of de facto discrimination. Such a holding would frustrate the purposes of the statute and lead to irrational consequences.

Indeed, the only circuit to consider a claim of overvaluation recognized that such claims were cognizable under the Act, albeit only if a certain threshold showing was made. *See Burlington Northern R. Co. v. Lennen*, 715 F.2d 494, 498 (10th Cir.1983) (holding that railroad could prevail on an overvaluation claim in federal courts provided it "can make a strong showing of a purposeful overvaluation of a particular railroad's property with discriminatory intent"), *cert. denied*, 467 U.S. 1230, 104 S.Ct. 2690, 81 L.Ed.2d 884 (1984). We decline to adopt the Tenth Circuit's threshold requirement; however, we agree that federal courts have jurisdiction over claims of rail property overvaluation.

■ We therefore hold that the 4–R Act authorizes federal district courts to hear claims of specific instances of overvaluation in state tax assessment of the true market value of rail transportation property.

### III.

■ Although the district court has the power to hear the railroad's Phase II claim, we conclude that the district court should abstain from considering whether the state's true market value figure is correct until the state itself has made such a determination. In doing so, we examine the larger relationship between the federal courts and state taxation.

The 4–R Act represents an exception to the federal government's reluctance to interfere with states' administration of their tax laws. The general policy, codified in the Tax Injunction Act, 28 U.S.C. § 1341, prohibits federal courts from enjoining the assessment, levy, or collection of any state or local tax when an adequate remedy is available in state courts. The Tax Injunction Act "reflect[s] the fundamental principle of comity between federal courts and state governments that is essential to 'Our Federalism,'" *Fair Assessment in Real Estate Association v. McNary*, 454 U.S. 100, 103, 102 S.Ct. 177, 179, 70 L.Ed.2d 271 (1981), and recognizes "the imperative need of a State to administer its own fiscal operations." *Tully v. Griffin, Inc.*, 429 U.S. 68, 73, 97 S.Ct. 219, 222, 50 L.Ed.2d 227 (1976).

Congress intended the 4–R Act to be a narrow and unintrusive exception for railroads to the Tax Injunction Act. *See* S.Rep.No. 1483, 90th Cong., 2d Sess. 10–12 (1968). An overly broad construction of section 11503(c) "would impose significant burdens on district courts," forcing them to sit as state tax assessment boards for rail transportation property "and would substantially thwart the tax collection process of states and their subdivisions." *Burlington Northern Railroad Co. v. Lennen*, 715 F.2d 494, 498 (10th Cir.1983).

Moreover, although section 11503 is an exception to the Tax Injunction Act, it is not an exception to general principles of abstention. *See McNary*, 454 U.S. at 105, 109, 102 S.Ct. at 180, 182–83 (holding that 42 U.S.C. § 1983 was an exception to the Tax Injunction Act, but abstention princi-

ples still applied so long as the federal claims involved were adequately protected). The railroads attacked the same valuations in state courts as they do here. California, with all of its timeliness requirements and levels of administrative and judicial review, provides adequate protection for any claims the railroads have of discrimination because of overvaluation. Their remedies in state court are plain, adequate, and complete. *Id.*

With these concerns in mind, we address whether the district court properly dismissed the valuation claims. We conclude that the district court should have found jurisdiction but abstained from resolving the merits of the state valuation question, and therefore should have stayed consideration of the railroads' valuation challenge under the 4–R Act [9] until the state courts resolve the valuation issue.

■ Abstention from deciding the valuation claim is appropriate under *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). When related proceedings are pending in state court at the time a case is filed in federal court, the federal court considers several factors to determine if abstention is appropriate: the amount of activity in the district court involving the issue in the state court actions; the nature of the issue and the effect on the case if the state court reaches a judgment; the convenience of the parties; the federal interests weighed against the state interests; and the desirability of avoiding piecemeal litigation. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983); *Colorado River,* 424 U.S. at 818, 96 S.Ct. at 1246–47. The federal court also considers whether state or federal law provides the rule of decision on the merits, *Moses H. Cone,* 460 U.S. at 23–26, 103 S.Ct. at 941–42, and the probable adequacy of the state court proceedings in protecting the parties' rights, *id.* at 26–27, 103 S.Ct. at 942–43.

Colorado River abstention is appropriate in this case. First, there was no activity in the district court involving the merits of the valuation challenge, which is the issue in the state court actions.[10] By contrast, the state proceedings were advanced at that time: out of the several cases filed, three had come to judgment, two were on appeal, and the rest were in various stages of discovery. Second, the nature of the issue is state taxation, and the effect on this case of a state court decision would be substantial. Property taxation is of special interest to states, as discussed *supra.* If the state courts decide in favor of the railroads and grant them refunds, this suit will become moot. If the state courts decide the valuation issue, Phase II becomes unnecessary because railroads will be collaterally estopped from asserting the valuation issue. Third, the convenience of the parties does not weigh in favor of or against abstention. *Colorado River* was concerned mainly with geographic convenience, and here neither forum is more convenient than the other. Fourth, the state interests outweigh the federal interests in this case. The state has a strong interest in ensuring that its officials fairly and accurately assess and valuate property, in enforcing compliance by state officials with the state's laws, and in ensuring that railroads pay their fair share of taxes. The federal interest is the same as the first state interest noted above: ensuring that state officials fairly and accurately assess

---

9. The Board argues that the Ninth Circuit has already decided that valuation challenges fail to state a claim under section 11503, citing *Trailer Train Co. v. State Board of Equalization,* 697 F.2d 860, 866 n.7 (9th Cir.), *cert. denied,* 464 U.S. 846, 104 S.Ct. 149, 78 L.Ed.2d 139 (1983). As the district court here observed, however, *Trailer Train* held only that section 11503 encompassed that particular equalization claim. It offered no ruling on valuation challenges, which involve state officials' compliance with state law and may therefore be precluded by *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 103–06, 104 S.Ct. 900, 909–11, 79 L.Ed.2d 67 (1984), from adjudication.

10. In fact, the only activity in the district court in Phase II was a motion and hearing on whether the valuation challenge states a claim under the 4–R Act.

and valuate property. Although this interest is strong, the state's corresponding interest is equally strong, and the state has the additional interests mentioned above. Thus, we conclude that the state interests outweigh the federal interests in this case.

In addition, state law provides the law of decision in the present case. Although the case involves interpretation of a federal statute, the merits of the Phase II portion of the trial deal only with the factual question of true market value, which the Act itself clearly implies is to be determined according to state law. See 49 U.S.C. § 11503(c) ("The burden of proof in determining assessed value and true market value is governed by State law."). Phase I of the trial determined that the state's valuation methodology was not discriminatory and did not violate the Act, and that determination is not involved in this appeal.

Finally, state courts are capable of protecting the railroad's rights under the Act. Unlike the situation in *Moses H. Cone,* in which there was serious doubt whether the state court even had the power to compel the arbitration sought by the plaintiff, 460 U.S. at 26–27, there is no doubt here that the state court has the power to grant the relief the railroad seeks, a determination of the true market value of its property.

The Ninth Circuit recently applied *Colorado River* abstention principles to another area of state concern, oil interests. *Mobil Oil Corp. v. City of Long Beach,* 772 F.2d 534, 541–42 (9th Cir.1985). *Mobil Oil Corp.* reaffirmed that *Colorado River* abstention is appropriate if there is ongoing state litigation filed substantially before the case in federal court, *id.,* if failing to abstain would result in piecemeal litigation, *id.,* if no "substantial progress" were made in the federal court, *id.,* and if the state is a party acting as sovereign rather than in its proprietary capacity, *id.* at 542. The factors in that case weighed against abstention, and the panel reversed the district court's decision to abstain.

*Mobil Oil* also distinguished *Shell Oil Co. v. Frusetta,* 290 F.2d 689 (9th Cir. 1961), in which we upheld dismissal of a declaratory judgment action regarding plaintiffs' ownership interests in lands leased to Shell Oil. *Shell Oil* did not use the term "abstention," but addressed the same concerns. The court dismissed because the plaintiffs had filed actions in state court three years earlier requesting adjudication of the same issues. *Mobil Oil* states that *Colorado River* restricted *Shell Oil,* but did not overrule it. *Shell Oil* still applies to cases in which, as here, the parties initiated the state litigation years before any federal suit, and in which dual litigation on the issue would "fragment the case." *Mobil Oil,* 772 F.2d at 541–42.

We recognize that Congress intended the 4–R Act to provide a federal remedy for discriminatory state taxation of railroad property. In the present case, the railroads chose their own forum; they elected to file an action in state court first, rather than challenging the administrative assessment action in federal court in the first instance. Our analysis might be different under a different state assessment structure, or if the railroads did not have the initial choice of forum. Here, however, the railroads cannot be heard to complain if a federal court defers to a state court in which the railroads themselves first sought relief.

Although the district court should abstain from deciding the merits of the valuation issue, it should retain jurisdiction but stay consideration of the federal question pending the outcome of the state actions. See *Kollsman v. City of Los Angeles,* 737 F.2d 830, 837 (9th Cir.1984) (finding it appropriate for the district court to retain jurisdiction while abstaining pending outcome of state court proceedings). Under *Colorado River, Mobil Oil,* and *Shell Oil,* discretionary abstention is appropriate until the state court determines the valuation issue. Once the state proceedings are concluded, the plaintiffs are free to resolve the remaining issues in federal court. The district court's order to dismiss is REVERSED with instructions to abstain from the merits of the valuation issue, and to stay consideration of whether a valuation

challenge states a claim under 49 U.S.C. § 11503.

NORRIS, Circuit Judge, dissenting:

I respectfully dissent. Plaintiffs contend that the State of California has subjected them to discriminatory state taxation in violation of a federal statute, the Railroad Revitalization and Regulatory Reform Act of 1976, § 306, 49 U.S.C. § 11503 (1982). A critical issue to be addressed in evaluating plaintiffs' federal statutory claim is the determination of the true market value of the rail transportation property subject to tax. Although this factual determination may be burdensome, federal courts are no less competent than state courts in making such factual findings.

In this case, the majority eagerly seeks to pass the task of determining true market value onto the state courts. Despite this eagerness, there is simply no doctrine of federal abstention which justifies the majority's abdication of the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). There is no pending state criminal proceedings that may be disrupted through the exercise of federal jurisdiction. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). No issue of federal constitutional law is presented which could be avoided through construction of state law. *See Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). And there is no threat of a needless conflict with the administration by a state of its own affairs. *See Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). The majority asserts that its decision to defer to state courts in determining

the railroads' valuation claim is supported by the doctrine of *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). The rarely invoked *Colorado River* doctrine, however, is simply inapposite to this case.

Despite the majority's contention, none of the prerequisites for *Colorado River* abstention is satisfied in this case. The proposed opinion does not identify any "extraordinary circumstances" sufficient to overcome the presumption in favor of exercising the jurisdiction conferred on the federal courts by Congress. *See Turf Paradise, Inc. v. Arizona Downs,* 670 F.2d 813, 819 (9th Cir.1982) (abstention is an "extraordinary and narrow exception that will normally be appropriate only when the consequences of exercising jurisdiction clearly outweigh the obligation to adjudicate suits over which the federal court has jurisdiction"), *cert. denied,* 456 U.S. 1011, 102 S.Ct. 2308, 73 L.Ed.2d 1308 (1982). There has been no assumption of jurisdiction over any res or property by the state courts, 424 U.S. at 818, 96 S.Ct. at 1246–47; there has been no showing that the federal forum is less convenient for either party, *id.;* and it is unclear whether the state court obtained jurisdiction of the matter significantly earlier than the federal court, *id.*[1] Finally, the existence of section 306 demonstrates Congress' assertion of a substantial federal interest in discriminatory taxation of railroads.

Further, in *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Supreme Court identified two additional factors relevant to the *Colorado River* analysis which counsel against abstention in this case. In this case, as in *Cone,* federal law would provide the rule of decision on the merits.[2] More importantly, the

---

1. The majority contends that the state court proceedings are advanced relative to the proceedings in federal court. The only support for this proposition is that some related state court cases had come to judgment, while others were either on appeal or at various stages of discovery. The majority does not establish that the

state litigation between these parties is significantly further advanced than this federal litigation which was originally filed in 1982.

2. The majority's contention that state law provides the rule of decision is disingenuous. The issue presented is whether the state has violated

Supreme Court in *Cone* determined that "the probable inadequacy of the state court proceeding to protect [defendant's] rights" weighed against abstention. 460 U.S. at 26, 103 S.Ct. at 942. If, as the majority apparently concedes, the railroad's claim of discriminatory valuation is cognizable under section 306 of the 4–R Act, 49 U.S.C. § 11503 (1982), the majority's application of *Colorado River* abstention disregards Congress' specific direction that claims of discriminatory taxation of rail property are to be adjudicated in the federal courts.

In this case, Congress, by creating a discrete exception to the Tax Injunction Act, 28 U.S.C. § 1341 (1982), has determined that plaintiffs' right to be protected from discriminatory taxation is best protected by vesting jurisdiction in federal courts. This express exception to the Tax Injunction Act, 28 U.S.C. § 1341 (1982), reflected Congress' fears that railroads are subject to discrimination in the imposition of state taxes. By abstaining from deciding this case, the majority effectively abdicates its Article III responsibilities to a tribunal which Congress has determined to be ineffective in protecting the rights of railroads to be taxed fairly. *Cf. Miofsky v. Superior Court*, 703 F.2d 332, 338 (9th Cir.1983) (abstention inappropriate where its effect would be to "emasculat[e] the exception to the Anti-Injunction Act that Congress created in enacting § 1983").

I object to the majority's decision requiring a federal court to defer to a state court when Congress has created a federal cause of action specifically to combat state discrimination against the plaintiffs. Therefore, I respectfully dissent.

---

section 306 in discriminating against railroads in its valuation of rail property. That question is one of federal law. The factual determination of true market value does not depend on the application of any body of substantive law, and the statute's incorporation of state rules governing burden-of-proof is collateral to the section 306 issue and does not weigh in favor of abstention.